[Crim. No. 3157. In Bank.—November 20, 1928.]

In the Matter of EVELYN ROSENCRANTZ on Habeas Corpus.

Howard K. James and W. L. Albert for Appellant.

U. S. Webb, Attorney-General, and Emery F. Mitchell and Wm. F. Cleary, Deputies Attorney-General, for Respondent.

CURTIS, J.—The petitioner is held in custody by the warden of the state prison at San Quentin under and by virtue of a commitment issued out of the superior court of the county of Alameda. This commitment was issued upon a judgment of conviction of petitioner of the crime of fraudulently making and uttering a check upon a bank without sufficient funds to meet the same, a felony, as defined by section 476a of the Penal Code, after three prior convictions

of a felony. The first of said prior convictions was for fraudulently issuing a fictitious check on or about March 8, 1916; the second, for fraudulently drawing a check on or about January 12, 1920, without sufficient funds to meet said check, and the third, for making and passing a fictitious instrument on or about April 15, 1923. The judgment of imprisonment, which was dated June 8, 1928, directed that "whereas E. Rosencrantz had been duly convicted in this Court of the crime of Felony, to-wit: a violation of Section 476a of the Penal Code and three prior convictions of Section 476a of the Penal Code of California, she therefore be confined in the state prison of the State of California at San Quentin, as prescribed by law, and that she be remanded to the custody of the Sheriff of the County of Alameda and be by him taken and delivered to the Warden of the state prison of the State of California at San Quentin."

In 1923 the legislature of this state enacted a new section to the Penal Code of this state, to be known as section 644, which section, in part, read as follows: "Every person convicted in this state of any felony who shall previously have been three times convicted, whether in this state or elsewhere of the crime of robbery, burglary, rape with force and violence, arson or any of them, shall be punished by imprisonment in the state penitentiary for not less than life. . . . " In 1927 this portion of said section was amended to read as follows: "Every person convicted in this state of any felony, who shall have been previously three times convicted, either in this state or elsewhere, of any felony, shall be punished by imprisonment in the state prison for not less than life and shall not be eligible to parole. . . . " (Stats. 1927, p. 1066.)

It is contended by petitioner that she is imprisoned in the state prison at San Quentin by virtue of the provisions of section 644 of the Penal Code, as amended in 1927; that said section of the Penal Code is unconstitutional and void and therefore and for these reasons her imprisonment and restraint is illegal.

The grounds upon which petitioner bases her contention that said section 644 is unconstitutional and void are (1) That the punishment of life imprisonment without the privilege and right of parole is cruel and unusual; (2) That sec-

tion 644 of the Penal Code is unconstitutional and void in
that it not only prescribes a greater punishment for a sub-
sequent offense, but the extent of the punishment prescribed
for a subsequent offense by said section after prior convic-
tion goes beyond the bounds of reason in view of the offenses
committed; (3) That said section 644, in so far as it relates
to the charge against petitioner, is unconstitutional and void
as being *ex post facto*.

We will consider these grounds in the order in which
they are presented by petitioner. First: Cruel and unusual
punishment is in contravention both of the federal and state
constitutions (Amendment VIII of the U. S. Constitution;
section 6 of article I of the Constitution of California).
Life imprisonment in the state prison cannot be said to be
either cruel or unusual. It has been in use not only since
the foundation of our state, but ever since the formation of
our national government such punishment has been em-
ployed both by the several states and the federal govern-
ment as one of the penalties imposed upon those who have
been found guilty of crime. Neither can it be said that the
deprival of petitioner of the right to parole is either cruel
or unusual. It has only been at a comparatively recent date
in the history of our state that any prisoner has been
granted the favor of parole. The right to parole is simply
a favor granted by the people of the state to those com-
mitted to our penal institutions as punishment for crime.
The withholding of this favor by the legislature from any
particular class of criminals cannot be said to inflict upon
those from whom the privilege has been denied a punish-
ment either cruel or unusual. The granting or withholding
of the privilege of parole to any particular class of pris-
oners is largely a matter of expediency which is left to the
law-making branch of our government, and the courts will
not interfere with the legislature in the exercise of such
power. (*People* v. *Oppenheimer,* 156 Cal. 733 [106 Pac. 74];
*McDonald* v. *Massachusetts,* 180 U. S. 311 [45 L. Ed. 542,
21 Sup. Ct. Rep. 389, see, also, Rose's U. S. Notes]; *People*
v. *Stanley,* 57 Cal. 113, 117 [17 Am. Rep. 401].)

Second: The second ground upon which petitioner
bases her right to be released from her imprisonment is that
the extent of such punishment prescribed for the subsequent
offense, after three prior convictions of a felony, goes far

beyond reason and therefore the imprisonment imposed upon her is illegal. In support of this contention petitioner refers to Cooley on Constitutional Limitations, 8th ed., p. 1231, where we find the following statement: "A police measure must fairly tend to accomplish the purpose of its enactment, and must not go beyond the reasonable demands of the occasion." Immediately following this sentence is the following: "But a large discretion is necessarily vested in the legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests." We think these two sentences taken together on the whole contain a correct statement of the law upon the subject. A statute like that enacted by section 644 of the Penal Code is frequently referred to as habitual criminal legislation and such legislation has been generally upheld by the courts of this and other jurisdictions. "An habitual criminal statute is a thing of modern creation, and while there are many rules of law which may seem inconsistent with its purpose and the procedure adopted to compass it, it is nevertheless sound in principle and sustained by reason. Aside from the offender and his victim there is always another party concerned in every crime committed—the state; and it does no violence to any constitutional guaranty for the state to rid itself of depravity when its efforts to reform have failed. The true ground upon which these statutes are sustained is, that the punishment is awarded for the second offense only, and that in determining the amount or nature of the penalty to be inflicted, the legislature may require the courts to take into consideration the persistence of the defendant in his criminal course." (8 R. C. L., p. 271.)

In *McDonald* v. *Massachusetts, supra,* a statute was sustained providing for punishment of imprisonment for the term of twenty-five years of any person convicted of a felony after such person had been twice previously convicted of crime. In the case of *People* v. *Oppenheimer, supra,* the defendant while undergoing a sentence of imprisonment in the state prison of this state was charged with an assault with a deadly weapon under section 246 of the Penal Code, making such offense committed by one imprisoned in a state prison of the state punishable with death. He was found guilty as charged and the extreme penalty imposed upon

him. The judgment against him was affirmed by this court. A statute even inflicting the death penalty will be declared invalid only in those cases where the punishment is "so disproportionate to the offense for which it is inflicted as to meet the disapproval and condemnation of the conscience and reason of men generally, 'as to shock the moral sense of the people.' " (*People* v. *Oppenheimer, supra.*) Can it be said that a statute or a section of the code prescribing a punishment of life imprisonment, without the right of parole, for those found guilty of the commission of a felony, after they have been three times previously convicted of a felony, is so disproportionate to the offense for which it is inflicted that it shocks the moral sense of the people? We think not. Society is not only entitled to be protected from the depravity of those criminally inclined, but it is the first and highest duty of government to secure to its citizens the enjoyment of their lives and property against the unlawful aggression of the criminal class, who, if unrestrained, would despoil the law abiding both of life and property. When a person has proven himself immune to the ordinary modes of punishment, then it becomes the duty of government to seek some other method to curb his criminal propensities that he might not continue to further inflict himself upon law-abiding members of society. This, we think, may be done even to the extent of depriving him permanently of his liberty. We have been cited to no authority by petitioner which would make it illegal to impose a life sentence upon her as punishment for her fourth conviction of a felony, and we doubt whether any exists. The state of Kentucky has enacted a statute providing that the punishment of one convicted for a third time of felony shall be fixed at confinement in the penitentiary for life, and the same has been sustained by the supreme court of that state. (*Herndon* v. *Commonwealth,* 105 Ky. 197 [88 Am. St. Rep. 303, 48 S. W. 989].) A similar statute was enacted by the legislature of the state of Ohio and was sustained by the supreme court of that state. (*Blackburn* v. *State,* 50 Ohio St. 428 [36 N. E. 18].) With these authorities supporting the validity of enactments similar to section 644 of the Penal Code, and with none to the contrary, we are unable to agree with petitioner that the extent of her imprisonment is beyond reason and therefore illegal. In our opinion the judgment of life

imprisonment imposed upon petitioner finds support both in law and in reason.

Third: It will be observed that the three prior crimes with which petitioner was charged and convicted were committed by her prior to the amendment of section 644 of the Penal Code, under which petitioner was prosecuted and the sentence of life imprisonment imposed. For this reason the petitioner contends that said section of the code, as amended, in so far as it applies to the crimes committed prior to its enactment, or to prior convictions rendered before its passage, is objectionable as being *ex post facto*. This same question has frequently been before the courts of this state and they have uniformly upheld such legislation as not being subject to said objection. The following statement from Cooley on Constitutional Limitations, 8th ed., p. 553, has been either directly cited, or in principle approved by the decisions of this court: ''And a law is not objectionable as *ex post facto* which, in providing for the punishment of future offenses, authorizes the offender's conduct in the past to be taken into the account, and the punishment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offense than for the first; and it has not been deemed objectionable that, in providing for such heavier penalties, the prior conviction authorized to be taken into account may have taken place before the law was passed. In such case, it is the second or subsequent offense that is punished, not the first; . . . '' (*Ex parte Gutierrez*, 45 Cal. 429, 432; *People* v. *King*, 64 Cal. 338 [30 Pac. 1028]; *People* v. *Smith*, 36 Cal. App. 88, 90 [171 Pac. 696]; *People* v. *Camperlingo*, 69 Cal. App. 466, 471 [231 Pac. 601]; *People* v. *James*, 71 Cal. App. 374, 378 [235 Pac. 81].) We do not regard this to be an open question any longer in this state.

It is intimated in some of the briefs filed on behalf of petitioner that section 644 of the Penal Code is in contravention of section 11 of article I of the constitution of the state requiring that all general laws shall have a uniform operation. There is no merit in such a contention, as the section of the code in question affects alike all offenders similarly situated and therefore does not deprive anyone of the equal protection of the laws. (*McDonald* v. *Massachusetts*, 180 U. S. 311, 313 [45 L. Ed. 542, 21 Sup. Ct. Rep. 389,

see, also, Rose's U. S. Notes] ; *People* v. *Smith*, 36 Cal. App. 88, 90 [171 Pac. 696] ; *People* v. *Finley*, 153 Cal. 59, 61 [94 Pac. 248] ; *People* v. *Carson*, 155 Cal. 164, 169 [99 Pac. 970].)

A further point is made by the attorney-general against the release of petitioner from her imprisonment and that is that even assuming section 644 of the Penal Code to be unconstitutional and void, still she would not be entitled to such release until the expiration of the time for which she could be lawfully confined by virtue of her conviction under section 476a of the Penal Code. This point is well taken. The commitment shows that petitioner was convicted of the crime denounced in section 476a, and the judgment is that she be confined in the state prison as prescribed by law. Even if we disregard that portion of the commitment, referring to the prior convictions of felony, we still have a valid commitment under section 476a against the petitioner, and not until the expiration of the term for which she may be lawfully imprisoned for the violation of said section 476a would petitioner be entitled to release from her imprisonment (*In re Morck*, 180 Cal. 384 [181 Pac. 657]). In that case this court said: "It is the established practice of the supreme court not to consider any question of excess of sentence until the expiration of the time for which the prisoner may be lawfully confined. It is clear, therefore, that a writ should not be granted at this time."

The application for a writ of *habeas corpus* is denied.

Shenk, J., Richards, J., Seawell, J., Preston, J., Langdon, J., and Waste, C. J., concurred.