[No. F022390. Fifth Dist. Dec. 11, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY INGRAM, Defendant and Appellant.

COUNSEL

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Harry Joseph Colombo and Carlos A. Martinez for Plaintiff and Respondent.

OPINION

STONE (W. A.), J.—Defendant Timothy Ingram appeals from a judgment of conviction after a jury found him guilty of two counts of residential burglary (Pen. Code,[1] §§ 459, 460) and the trial court found true allegations he had suffered two prior convictions for residential burglary and had served a prior prison term for possession of stolen property. Because of the two prior residential burglary convictions and the current residential burglary convictions, defendant is subject to sentencing pursuant to the "Three Strikes" law, section 667, subdivisions (b)-(i). The court sentenced defendant to state prison for a total term of 27 years to life.

Defendant claims the judgment of conviction must be modified to reflect a second degree burglary conviction for count I because that count involved the burglary of a garage which was attached but not connected by a doorway to the inhabited portion of the house. He claims the Three Strikes law does not apply to him because his prior felony convictions occurred before enactment of that law, and even assuming he was subject to sentencing pursuant to section 667, his term was miscalculated because it should not have included 11 years for 3 enhancements which are based upon prior felony convictions. Therefore, he concludes, the indeterminate term of 27 years to life must be reduced to an indeterminate term of 25 years to life. Defendant also claims his sentence violates article I, section 17 of the California Constitution because it is grossly disproportionate to the offense for which it is imposed.

Respondent contends (1) defendant's sentence is less than mandated by section 667, subdivision (e)(2)(A); (2) consecutive terms of 25 years to life should have been imposed for each count; and (3) the 11-year enhancement term should have been added for a total minimum term of 61 years.

### The Current Offenses

The circumstances of the current offenses are undisputed. On the morning of March 28, 1994, between the hours of 9:30 a.m. and 11 a.m., defendant

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

entered Mrs. Migaki's garage without permission and took an automobile battery charger, a surveyor's transit, a hedge trimmer and extension cord. Mrs. Migaki was not home at the time of the burglary. Defendant placed the items in the back of his car and returned to Mrs. Migaki's house. He fled when the burglar alarm sounded as he attempted to pry open the back door to the house.

Soon thereafter, defendant entered the Ewy residence through a bathroom window. He opened a china cabinet drawer looking for something of value, but fled when the burglar alarm sounded. The police stopped his car after receiving a dispatch describing the suspect and vehicle involved in the Ewy burglary. The stolen items were found inside defendant's car.

### DISCUSSION

### I

### *Degree of Burglary*

Defendant admits he burglarized the Migaki garage. The issue here concerns the degree of that burglary. Every burglary of an inhabited dwelling house is first degree burglary; all other kinds of burglary are of the second degree. (§ 460.)

The jury was instructed a garage attached to an inhabited dwelling house "that shares a common roof and is an integral part of said dwelling is considered an inhabited dwelling."

The Migaki house, garage and carport share the same roof. In order to enter the garage from the house, one must exit the "rumpus room" door into the carport and use a garage door opener to enter the garage. Garden tools and equipment are stored in the garage.

Defendant contends the burglary of Mrs. Migaki's garage is in the second degree because, although the garage and house share a common roof, there is no connecting door which provides immediate access to the living quarters from the garage. Defendant concedes settled case law does not support his theory, but he argues this court is not bound by the leading cases because the California Supreme Court has not yet decided the issue.

*People* v. *Cook* (1982) 135 Cal.App.3d 785 [185 Cal.Rptr. 576], holds "where the garage is an attached and integral part of the house, it is simply one room of several which together compose the dwelling." (*Id.* at p. 796.)

The opinion also notes: "This is especially true where, as in this case, the garage can be reached through an inside door connecting it to the rest of the residence. The statistically greater probability that an occupant of the house may be in the attached garage or enclosed patio justifies the Legislature's decision to treat burglaries of such locations more severely. . . ." (*People* v. *Cook, supra,* 135 Cal.App.3d at p. 796.)

Subsequently, in *People* v. *Moreno* (1984) 158 Cal.App.3d 109 [204 Cal.Rptr. 17], the defendant seized upon *Cook*'s reference to an inside connecting door and argued an attached garage without an inside connecting door was not an "inhabited dwelling" for purposes of a first degree burglary designation. The *Moreno* court rejected the contention: "Defendant's attempts to distinguish *Cook* are inapposite. He places excessive emphasis on the fact that, unlike *Cook*, this case did not involve a door connecting the garage to the interior of the house. The *Cook* court itself noted, however, that a connecting door was only one method of demonstrating that a garage was an attached and integral part of a dwelling. [Citation.] Moreover, given the fact that the garage was under the same roof, functionally interconnected with, and immediately contiguous to other portions of the house, simple logic would suffer were we to leap over this interrelationship to a conclusion that a garage is not part of a dwelling because no inside entrance connects the two. . . ." (*People* v. *Moreno, supra,* 158 Cal.App.3d at p. 112.)

In *People* v. *Coutu* (1985) 171 Cal.App.3d 192 [217 Cal.Rptr. 191], the defendant burglarized a storeroom that was connected to the main house by a breezeway. The house, breezeway, and storeroom shared a common roof. The breezeway had a door on one side and was open on the other side. Defendant claimed the storeroom was a detached structure which was not a part of the dwelling, so that he was guilty only of second degree burglary. He argued *Cook* was distinguishable because of the presence of the inside connecting door in that case, and *Moreno* was distinguishable because the garage in that case was connected to the house by a common wall. The *Coutu* court found these distinctions to be meaningless and concluded "the connecting breezeway structure rendered the storeroom 'functionally interconnected with' and 'an integral part of' the main house." (171 Cal.App.3d at p. 193.)

Defendant contends the reasoning in these cases is faulty because the focus is on physical proximity, i.e., whether the structure and house are physically connected. Instead, according to defendant, the focus should be on whether the structure is immediately accessible through an inside connecting door.

Defendant reasons the designation of residential burglary as a higher degree of burglary is based upon the premise there is a greater potential for

a confrontation between burglar and resident, and therefore a greater threat to personal safety. This danger diminishes, according to defendant, if the building is detached or if there is no connecting door. Defendant opines there are fewer trips to an attached garage when there is no connecting door and the occupants of the house are not as threatened by an intruder in an attached garage if there is no immediate access into the living quarters through an inside door.

There is no meaningful distinction between an attached garage with an outside door and an attached garage with an inside door for purposes of deciding the degree of burglary. The close physical proximity of an attached structure is precisely what increases the potential for confrontation and threatens the safety of residents. This potential is no less when access to the garage is from outside rather than from inside the house. The proper focus is whether the attached structure is an integral part of a dwelling, that is, functionally interconnected with and immediately contiguous to other portions of the house. (*People* v. *Moreno, supra,* 158 Cal.App.3d at p. 112.) The absence of an inside door does not compel a designation of second degree burglary.

## II

### *Determination of Prior Strikes*

Defendant contends he cannot properly be sentenced under the Three Strikes law because at the time his prior felony convictions were entered, the convictions were not found to be "strikes." In other words, the determination of a "strike" is prospective only since a court could not have made such a determination at the time of a prior conviction which predated the legislative enactment of the Three Strikes law.

This challenge to the application of the punishment provisions for recidivists under section 667, subdivisions (b)-(i) has been rejected by numerous courts. (*People* v. *Anderson* (1995) 35 Cal.App.4th 587 [41 Cal.Rptr.2d 474]; *People* v. *Reed* (1995) 33 Cal.App.4th 1608 [40 Cal.Rptr.2d 47]; *People* v. *Sipe* (1995) 36 Cal.App.4th 468 [42 Cal.Rptr.2d 266]; *People* v. *Green* (1995) 36 Cal.App.4th 280 [42 Cal.Rptr.2d 249].) Most recently, this court rejected the contention in *Gonzales* v. *Superior Court* (1995) 37 Cal.App.4th 1302 [44 Cal.Rptr.2d 144], and we see no reason to repeat our reasoning here.

III

*Calculation of Sentence Section 667, Subdivision (e)(2)(A)*

The relevant subdivisions[2] of section 667 provide in part:

"(e) For purposes of subdivisions (b) to (i), inclusive, and in addition to any other enhancement or punishment provisions which may apply, the following shall apply where a defendant has a prior felony conviction:

"(1) If a defendant has one prior felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction.

"(2)(A) If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:

"(i) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions.

"(ii) Imprisonment in the state prison for 25 years.

"(iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046.[3]

"(B) The indeterminate term described in subparagraph (A) shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to any indeterminate term described in subparagraph (A) shall not be merged therein but shall commence at the time the person would otherwise have been released from prison."

---

[2]All further references to "subdivision" or "subdivisions" in part III of this opinion are to subdivisions of section 667 unless otherwise noted.

[3]Because subdivision (e)(2)(A) provides the sentencing court with three formulas by which to determine the minimum term, for simplicity we shall refer to the calculation pursuant to subdivision (e)(2)(A)(i) as "option (i)," the calculation pursuant to subdivision (e)(2)(A)(ii) as "option (ii)," and the calculation pursuant to subdivision (e)(2)(A)(iii) as "option (iii)."

Defendant was sentenced to an indeterminate term of life in prison with a minimum term of 27 years. The sentencing court invoked option (i) and tripled the midterm of four years imposed for count one (twelve years), tripled one-third the middle term imposed for count three (four years), ran the terms consecutively and added two 5-year consecutive enhancements for each of defendant's prior serious felony convictions (subd. (a)) and a one-year consecutive enhancement for the service of a prior prison term (subd. (b)).

 It is settled that enhancements are included when determining the minimum term of the indeterminate sentence under option (iii), but are not included when determining the minimum term of the indeterminate sentence under option (i). (*People* v. *Anderson, supra*, 35 Cal.App.4th 587, 596.) The parties agree option (ii) provides the appropriate minimum term since the total term under option (i) without enhancements and the total term under option (iii) with enhancements would be less than 25 years.

However, respondent contends the court was compelled to impose the minimum term of 25 years *consecutively on each count.* (Subd. (c)(7).) The court was then required to impose consecutively the additional two 5-year enhancements pursuant to subdivision (a) as well as the one-year enhancement pursuant to section 667.5, subdivision (b). According to respondent, the term as imposed violates mandatory provisions of section 667. The sentence therefore is unauthorized and is subject to correction on appeal. (*People* v. *Irvin* (1991) 230 Cal.App.3d 180, 192-193 [281 Cal.Rptr. 195]; see also *People* v. *Karaman* (1992) 4 Cal.4th 335, 349, fn. 15 [14 Cal.Rptr.2d 801, 842 P.2d 100]; *People* v. *Welch* (1993) 5 Cal.4th 228, 235-236 [19 Cal.Rptr.2d 520, 851 P.2d 802]; *People* v. *Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) According to respondent's calculations, defendant should be eligible for parole in 61 years.

The issue requires that we analyze separately (A) whether the terms of 25 years to life for each residential burglary must be imposed consecutively, and (B) whether in addition to these terms the court must impose consecutively the enhancements for prior felony convictions and a prior felony prison term.

## A. *Consecutive Terms*

Subdivision (c)(6) provides: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)."

We agree with respondent that this language clearly and unambiguously mandates consecutive 25-years-to-life terms for each felony count for which defendant stands convicted. Defendant makes various assertions regarding the meaning and effect of subdivision (c)(6), none of which persuades us.

Defendant contends respondent's construction of the relevant language "cannot be squared" with the option for calculation of the minimum term under option (i). However, we are not concerned with any ambiguity or potential for conflict between option (i) and subdivision (c)(6) because defendant's sentence is determined by option (ii), the mandatory minimum of 25 years. The question is whether, pursuant to subdivision (c)(6), the mandatory minimum of 25 years must be imposed consecutively for each current felony count of which defendant stands convicted.

Even if we assume the relationship between option (i) and subdivision (c)(6) could present a problem with regard to statutory construction and the meaning and effect of subdivision (c)(6) as it relates to option (ii), defendant's argument is without merit.

According to defendant, "the term otherwise provided as punishment for each current felony conviction" as used in option (i) means the term as calculated under section 1170.1. That code section explains how the aggregate term is calculated when a defendant is convicted of two or more felonies for which consecutive terms are imposed. According to defendant, option (i) is the "sum" of three times the principle term and three times the subordinate term. Therefore, the sentence on each count is run consecutively for the purpose of determining the minimum term under option (i). Defendant contends under respondent's construction of subdivision (c)(6), the counts would first be tripled and added consecutively to determine the minimum term; that minimum term then would be imposed consecutively for each count. In other words, the counts would be run consecutively twice; first when determining the minimum and again when imposing the term for each count.

Defendant's argument reveals several weaknesses.

First, defendant's incorporation of section 1170.1 into option (i) is untenable. The "term otherwise provided as punishment" clearly means the term of punishment for the current felony offense, i.e., the determinate term whether that is the lower, middle or upper term as provided by law. (§ 1170.) In this case, for example, the punishment for residential burglary is imprisonment in state prison for a term of two, four, or six years. (§ 461.) There is

nothing in the language of option (i) which suggests the "aggregate" term is multiplied,[4] nor does option (i) indicate multiple current felony convictions must be combined, as opposed to considered separately, when calculating the mandatory minimum term.

Second, defendant seems to suggest subdivision (c)(6) applies only to option (i), and the purpose of subdivision (c)(6) is to make consecutive sentences mandatory so that the trial court has no discretion to triple concurrent terms when determining the minimum term under option (i). In other words, subdivision (c)(6) merely supplies the requirement that the court calculate the "sum" of three times each current felony offense under option (i). Consecutive sentences are not otherwise required when sentencing under subdivision (e) according to defendant's construction of subdivision (c)(6).

There is nothing in either the language of subdivisions (b)-(i) or in the legislative history of the Three Strikes law that supports such a restricted application of consecutive sentencing.

According to the analysis of Assembly Bill No. 971 prepared by the Senate Committee on the Judiciary, "This bill would provide that if the person has two previous violent or serious felony convictions, he or she must be sentenced to a term of 25 years to life in prison for each new felony conviction, which must be served consecutively." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994.)

Moreover, defendant's theory fails to account for all current felony offenses in arriving at the minimum term. Under his construction, a defendant currently convicted of a single residential burglary and a defendant convicted of two or even three separate residential burglaries would receive the same sentence. It would be contrary to the clear intent of the law to impose one 25-year-to-life term regardless of the number of felonies for which the defendant stands currently convicted.

The language of subdivision (c)(6) is clear and unambiguous: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)."

---

[4]Moreover, since enhancements are included in the aggregate term as defined in section 1170.1, use of the aggregate term in the calculation under option (i) is inconsistent with defendant's position on appeal that option (i) does not include enhancements.

Since each felony count of which defendant currently stands convicted arises from separate residential burglaries, the mandatory minimum term of 25 years to life must be imposed consecutively for each count, for a minimum determinate term of 50 years.

## B. *Enhancements*

The "prefatory language" of subdivision (e) reads,

"For the purpose of subdivisions (b) to (i) inclusive, and *in addition to any other enhancement or punishment provisions which may apply*, the following shall apply where a defendant has a prior felony conviction. . . ." (Italics added.)

Again, respondent contends the highlighted language clearly and unambiguously compels the imposition of enhancements in addition to the minimum term of the indeterminate sentence under option (ii).

Defendant contends the reference to enhancements and other punishment provisions "simply recognizes" that other punishment provisions may apply and "if they may apply, they shall be applied." However, reasons defendant, the language does not suggest prior serious felony convictions are to be used twice; enhancements such as prior convictions are only used when the longest minimum term for a Three Strikes defendant is determined under option (iii).

Again, defendant's various arguments are unpersuasive.

## 1. *Subdivision (e)*

Defendant contends the phrase "in addition to any other enhancement or punishment provisions that may apply" in subdivision (e) must be construed to include "conduct and bail enhancements," but not to include enhancements for prior convictions. He later modifies his contention somewhat, claiming the phrase simply means other applicable enhancements must be applied, including prior convictions, but they cannot be used twice. He reasons option (iii) is the only option for determining the minimum term that expressly "authorizes" enhancements. Because of this express authorization, enhancements "are not already encompassed" in subdivision (e)'s general reference to enhancements or punishment provisions which may apply. Defendant surmises that the language in option (iii) would be "complete surplusage" if subdivision (e) is interpreted to require the imposition of enhancements when the minimum term is calculated under option (i) or (ii).

Defendant's logic in this regard is not entirely clear. We reject his argument to the extent he is suggesting enhancements are imposed only when the minimum term for a third strike defendant is calculated under option (iii).

It is apparent from the legislative history of Three Strikes that the purpose of option (iii) is to allow the sentencing court to calculate the minimum term pursuant to existing law, i.e., as it would under section 1170. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994.) It is conceivable that enhanced punishment for certain offenses as provided by sentencing provisions predating the Three Strikes law may be greater than the "triple term" of option (i) and the 25-year mandatory minimum of option (ii). It would be entirely contrary to the clear intent of the Legislature and voters of the state for Three Strikes defendants to receive less severe punishment than they would have received prior to the law's enactment.[5]

Because the court must first determine the longest minimum term under either option (i), (ii) or (iii), if it finds the longest term is provided by option (iii) by including enhancements, *there are no "other enhancement or punishment provisions" to add to the minimum term.* (Subd. (e).) However, if the court finds the longest minimum term is provided under either option (i) or (ii) without including enhancements, any enhancements not so included are "other enhancement or punishment provisions" which must be added to the minimum term. (Subd. (e).)

Under this construction of the prefatory language of subdivision (e) vis-à-vis the three options, there is no surplusage, redundancy, or conflict. Enhancements are imposed only once, either in determining the minimum term under option (iii) or after the minimum term is determined under either option (i) or (ii).

## 2. *Section 654*

■ Section 654, which bars double punishment for a single "act or omission," is not violated by the imposition of enhancements in addition to two consecutive twenty-five-year minimum indeterminate terms pursuant to subdivisions (c)(6) and (e)(2). Defendant qualifies for the harsher punishment provisions of subdivision (e)(2) because he has a history of recidivism—his repeated serious criminal behavior as demonstrated through two prior

---

[5]The wording of option (iii) is identical to one of two sentencing alternatives found in section 667.7, another habitual offender sentencing provision. In *People v. Jenkins* (1995) 10 Cal.4th 234 [40 Cal.Rptr.2d 903, 893 P.2d 1224], the court concluded that the purpose of this sentencing alternative was to "ensure that a defendant who qualifies for habitual offender sentencing does not receive treatment more lenient than that accorded a nonhabitual offender who commits the same offense." (10 Cal.4th at p. 250.)

serious felony convictions. No single act or omission is being punished more than once. (*People* v. *Anderson, supra,* 35 Cal.App.4th at pp. 599-600.)

### 3. *Multiple Enhancement*

*People* v. *Jones* (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163] holds, "when multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply." (5 Cal.4th at p. 1150.) However, *Jones* does not support defendant's claim that the imposition of subdivision (a) enhancements, after determining the minimum term of imprisonment under options (i) or (ii), is prohibited.

First, the issue, as framed by the majority in *Jones*, was whether the electorate intended, when it enacted Proposition 8, for a sentence to prison to be enhanced both for a prior conviction and for a prison term imposed for that conviction. (5 Cal.4th at p. 1149.) *Jones* concluded that while there clearly was an intent to increase sentences for recidivist offenders, there was no provision for imposing the two enhancements cumulatively—only the greater of the two enhancements, which is the prior conviction enhancement of subdivision (a). (*People* v. *Jones, supra,* 5 Cal.4th at pp. 1149-1152.)

*People* v. *Jenkins, supra,* 10 Cal.4th 234, held *Jones* does not preclude the use of a prior serious felony conviction enhancement when calculating the minimum period of imprisonment that a defendant must serve under the alternative sentencing scheme for habitual violent offenders found in section 667.7 even though the same prior conviction qualifies him for the harsher sentencing scheme. (10 Cal.4th at p. 254.) Relying upon the accepted definition of an "enhancement" as "an additional term of imprisonment added to the base term" (Cal. Rules of Court, rule 405(c)), the court concluded: "Neither section 667.7, nor an indeterminate life term imposed under that section, involves a sentence enhancement. [Citations.] Thus, we are not confronted with a situation presenting one or more statutory enhancement alternatives to a section 667, subdivision (a) enhancement." (*People* v. *Jenkins, supra,* 10 Cal.4th 234 at p. 254.)

Similarly, although the calculation of the minimum term under option (iii) includes enhancements, the sentencing scheme set forth in subdivision (e) is not itself an enhancement. (*People* v. *Sipe, supra,* 36 Cal.App.4th at pp. 484-487; *People* v. *McKee* (1995) 36 Cal.App.4th 540, 546 [42 Cal.Rptr.2d 707].)

Therefore, unless the longest minimum determinate term is provided by option (iii), the rule against double enhancement found in *Jones* does not

preclude the imposition of prior serious felony enhancements after calculating the longest minimum term of imprisonment under the alternative sentencing scheme set forth in subdivision (e).

There is an additional reason why *Jones* is not controlling here. The court in that case found no indication the drafters of Proposition 8 intended to authorize cumulative enhancements. (*People* v. *Jones, supra,* 5 Cal.4th at pp. 1149-1150.) In the case of Three Strikes, while there is no indication "cumulative" enhancement was intended, it is manifest that the legislative intent was to authorize the addition of enhancements after calculating the minimum term of the indeterminate sentence. (*People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 571-572 [39 Cal.Rptr.2d 374].) The statute provides expressly that the sentencing structure for determining the minimum term of imprisonment applies "in addition to any other enhancement or punishment provisions which may apply." (Subd. (e).) Thus, if a defendant qualifies for sentencing under Three Strikes and the minimum term is calculated without resort to enhancements, i.e., under options (i) or (ii), enhancements must be added to increase the number of years before the defendant is eligible for parole.

In sum, respondent is correct in its interpretation and application of section 667 in this case. The trial court imposed an unauthorized sentence which must be corrected to reflect the imposition of an indeterminate term of life imprisonment with a minimum term of 25 years for each current felony count to be served consecutively, with an additional 11 years for enhancements based upon 2 prior serious felony convictions and a prior prison term.

IV

*Cruel or Unusual Punishment*

Defendant contends the sentence the trial court imposed, 27 years to life, is cruel or unusual punishment as applied to him because it is grossly disproportionate to the offenses he committed. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390, 668 P.2d 697].) When he made the argument he did not anticipate he would be exposed to a sentence of almost three times that length as a result of this appeal. Accordingly, we examine his disproportionality argument assuming he faces a sentence of 61 years to life.

The judiciary may not interfere with the authority of the Legislature to define crimes and prescribe punishment unless a prescribed penalty is so severe in relation to the crime that it violates the constitutional prohibition

against cruel or unusual punishment. (*People* v. *Dillon, supra*, 34 Cal.3d at pp. 477-478; *In re Lynch* (1972) 8 Cal.3d 410, 423-424 [105 Cal.Rptr. 217, 503 P.2d 921].) Nevertheless, a sentence may violate article I, section 17, of the California Constitution if it is so disproportionate to the crime for which it is imposed that it "shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra*, 8 Cal.3d at p. 424.)

We first note habitual offender statutes have long withstood the constitutional claim of cruel or unusual punishment. (*In re Rosencrantz* (1928) 205 Cal. 534 [271 P. 902]; *People* v. *Weaver* (1984) 161 Cal.App.3d 119, 126 [207 Cal.Rptr. 419].) In *Rosencrantz*, the defendant, after her fourth conviction for passing bad checks, received a sentence of life without the possibility of parole. Former section 644 provided in part: "Every person convicted in this state of any felony, who shall have been previously three times convicted, either in this state or elsewhere, of any felony, shall be punished by imprisonment in the state prison for not less than life and shall not be eligible to parole. . . ." (*In re Rosencrantz, supra*, 205 Cal. at p. 536.)

The Supreme Court rejected defendant's disproportionality argument: "Can it be said that a statute or a section of the code prescribing a punishment of life imprisonment, without the right of parole, for those found guilty of the commission of a felony, after they have been three times previously convicted of a felony, is so disproportionate to the offense for which it is inflicted that it shocks the moral sense of the people? We think not. Society is not only entitled to be protected from the depravity of those criminally inclined, but it is the first and highest duty of government to secure to its citizens the enjoyment of their lives and property against the unlawful aggression of the criminal class, who, if unrestrained, would despoil the law abiding both of life and property. When a person has proven himself immune to the ordinary modes of punishment, then it becomes the duty of government to seek some other method to curb his criminal propensities that he might not continue to further inflict himself upon law-abiding members of society. This, we think, may be done even to the extent of depriving him permanently of his liberty. . . ." (*In re Rosencrantz, supra*, 205 Cal. at p. 539.)

 Defendant does not challenge the constitutionality of the Three Strikes initiative on its face as providing for cruel or unusual punishment. But he argues as applied to him, the sentence imposed under section 667 is cruel or unusual because it is disproportionate to the crimes he committed. (*In re Lynch, supra*, 8 Cal.3d at p. 424.)

 When applying the *Lynch* test for disproportionality, a court considers certain factors: (1) the degree of danger the offender or the offense

pose to society; (2) how the punishment compares with punishments for more serious crimes in the same jurisdiction; and (3) how the punishment compares with punishment for the same offense in other jurisdictions. (*In re Lynch, supra,* 8 Cal.3d at pp. 425-427.)

A. *Offense and Offender*

██ Defendant claims the manner in which he burglarized the Migaki and Ewy premises posed no danger to the residents because he made certain no one was home before breaking in. He argues the record reflects he saw no cars in the driveway and no one answered when he knocked on the door.

Burglarizing a residence while the inhabitants are present is indeed much more dangerous than when no one is home. The victims of defendant's crimes were fortunate they did not encounter defendant in the act of burglarizing their homes, but no one knows what might have happened had he confronted someone at either home. The record reflects he may have been armed with a knife.[6] His history indicates he confronted his victims with a knife during a 1990 burglary.

In *People* v. *Weaver* (1984) 161 Cal.App.3d 119, 127 [207 Cal.Rptr. 419] the court explained: "Residential burglary is an extremely serious crime presenting a high degree of danger to society. ' "Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence." (*People* v. *Lewis* (1969) 274 Cal.App.2d 912, 920 . . . .) In addition, a burglary of an inhabited dwelling involves an invasion of perhaps the most secret zone of privacy, the place where trinkets, momentos, heirlooms and the other stuff of personal history are kept. Society therefore has an important interest in seeing to it that burglars stay out of inhabited dwelling houses.' [Citation.]"

When assessing an individual defendant's claim that punishment under an habitual offender statute is disproportionate, the nature of the offender is critical. Defendant was 30 years old at the time the probation report was prepared for this case. He had used drugs and alcohol extensively since the age of 14 and was a heroin addict. He had been in and out of jail or prison since 1982. His longest period of time free from custody was 16 months. He has a juvenile record and his adult convictions include three burglaries,

---

[6]He told the investigating officer he was not afraid of the large German shepherd running loose at the Ewy residence because he had his knife with him.

several theft-related convictions, a conviction for driving under the influence of alcohol or drugs, and a conviction for possession of a weapon while in prison. He was twice returned to custody for parole violations and was on parole at the time he committed the current offenses.

Defendant concedes he is a habitual offender—that there is a "danger" he will steal or burglarize again if he is not incarcerated. However, he claims his crimes are "passive felonies" because they were committed in a manner to "minimize the risk of physical danger to his victims." We do not believe residential burglary, a "serious felony" offense, can be viewed as a "passive" crime. We reject his self-serving claim the prior burglary during which he threatened his victims with a knife is a mere aberration. There is nothing to suggest he would not confront a victim again. Even assuming residential burglary can be "passive," this record does not instill confidence that defendant is a "passive felon" rather than a habitual serious felon.

Society's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence. (*Rummel* v. *Estelle* (1979) 445 U.S. 263, 275 [63 L.Ed.2d 382, 391-392, 100 S.Ct. 1133].) "[The] primary goals [of a recidivist statute] are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." (*Rummel* v. *Estelle, supra*, 445 U.S. at pp. 284-285 [63 L.Ed.2d at p. 397].)

Defendant is precisely the type of offender from whom society seeks protection by the use of recidivist statutes. There is no indication defendant desires to reform or to change his criminal behavior. The record reflects an individual who preys on innocent people in order to support a serious drug habit which he has made minimal efforts to resolve.[7]

By adding section 667, subdivisions (b)-(i), the Legislature clearly intended to segregate habitual serious felony offenders who, like defendant,

---

[7]He participated in 6 months of counseling for his alcoholism when he was 16 or 17 and otherwise participated in a drug treatment program for a short time during one of his unsuccessful attempts at parole.

have not been rehabilitated or deterred from further criminal conduct as a result of imprisonment. The law was passed as urgency legislation to take effect immediately in order "to protect the public from the imminent threat" posed by repeat felony offenders. (Stats. 1994, ch. 12, § 2.) It passed by overwhelming margins in both the Assembly and the Senate. The voters of the State of California affirmed this urgency when the initiative version of the law, Proposition 184, was approved by a margin of 72 percent to 28 percent. (Statement of Vote, Gen. Elec. (Nov. 8, 1994) p. ix.)

Fundamental notions of human dignity are not offended by the prospect of exiling from society those individuals who have proved themselves to be threats to the public safety and security. Defendant's sentence is not shocking or inhumane in light of the nature of the offense and offender.

## B. *Punishment for More Serious Crimes in California*

Defendant compares his sentence of 27 years to life, now 61 years to life, with the punishment for first degree, premeditated murder with a firearm. (§§ 190, subd. (a), 12022.) He claims a cold-blooded murderer poses more of a danger to society and yet receives a lesser sentence. Defendant's analysis is in error for several reasons.

First, a person who is convicted of first degree, premeditated murder is subject to the death penalty, life in prison without the possibility of parole, or a term of 25 years to life, depending upon the circumstances of the offense and the offender. (§ 190, subd. (a).) The maximum punishment is much greater than defendant's maximum punishment under section 667.

Second, proportionality assumes a basis for comparison. When the fundamental nature of the offense and the offender differ, comparison for proportionality is not possible. The seriousness of the threat a particular offense poses to society is not solely dependent upon whether it involves physical injury. (*Rummel* v. *Estelle, supra,* 445 U.S. at p. 275 [63 L.Ed.2d at pp. 391-392].) Therefore, the commission of a single act of murder, while certainly heinous and severely punished, cannot be compared with the commission of multiple serious felonies.

## C. *Punishment for Similar Offenses in Other Jurisdictions*

Defendant offers no comparison of recidivist statutes in other jurisdictions. We simply note California's Three Strikes scheme is consistent with the nationwide pattern of substantially increasing sentences for habitual offenders.

The authorized sentence of 61 years to life is not disproportionate and does not constitute cruel or unusual punishment.

## DISPOSITION

The judgment of conviction is affirmed. The sentence is reversed and the matter remanded for resentencing in accordance with part III of this opinion.

Martin, Acting P. J., and Harris, J., concurred.

A petition for a rehearing was denied January 5, 1996, and appellant's petition for review by the Supreme Court was denied March 14, 1996. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.