948 P.2d 564

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Richardo DULDULAO, Defendant–Appellant,**

and

**Valentin Isla Corpuz, Defendant.**

**No. 20201.**

Intermediate Court of Appeals of Hawai'i.

Oct. 8, 1997.

---

Daphne E. Barbee, on the briefs, Honolulu, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

BURNS, Judge.

Defendant–Appellant Ricardo Duldulao (Duldulao) appeals the September 25, 1996 judgment, upon a jury verdict, convicting him of Burglary in the First Degree, Hawai'i Revised Statutes (HRS) § 708–810(1)(c) (1993), and sentencing him to probation for five (5) years and confinement for 108 days with credit for time served. We affirm.

## BACKGROUND

On April 9, 1996, the O'ahu Grand Jury indicted Duldulao and co-defendant Valentin Isla Corpuz (Corpuz) for Burglary in the First Degree and indicted Corpuz for Unauthorized Control of Propelled Vehicle, HRS § 708–836 (1993), Resisting an Order to Stop Motor Vehicle, HRS § 710–1027 (1993), and Reckless Driving of Vehicle, HRS § 291–2 (1993). Duldulao pled not guilty and his jury trial began on June 24, 1996.

Ray Tanaka (Tanaka) testified that sometime around 2:00 p.m., on September 20, 1995, he heard a loud noise coming from the residence of his neighbor, Wayne Segawa (Segawa), at 99–229 Hailimanu Place, in 'Aiea. Tanaka looked and saw a young Filipino male inside Segawa's garage rummaging through the storage shed. He also saw·a blue truck and took note of the license plate number as well as the "older" Filipino man standing next to the truck who subsequently waved to him. Because nine months had passed, Tanaka testified that he "probably" could not identify either of the people in Segawa's garage at trial. Tanaka went back into his house to call the police and report the license plate number, as well as a description of the two men and the truck. When Tanaka returned from the house a few minutes later, both men and the truck were gone. Tanaka did not see the "older" Filipino take, hold, or move any of the tool boxes. At no time did Tanaka say which one was Duldulao.

The evidence shows that the garage and the house shared a common roof and a common wall and the storage shed was in the garage, free-standing, separately secured, and located against the common wall between the garage and the house. Segawa kept tools, equipment, and a work bench approximately 35 inches high in the storage shed.

Honolulu Police Officer Eli Walters (Officer Walters) testified that he received the license plate number, as reported by Tanaka, from police dispatch. Shortly thereafter, Officer Walters saw a truck that matched the description. In the course of a high speed chase, the truck spun out of control and came to a stop. When Officer Walters saw both

men jump out of the truck and flee the scene, he continued to chase the driver, later identified as Corpuz. Officer Walters and an eyewitness identified Duldulao as the passenger who ran from the truck. Duldulao was apprehended by Officer Kathleen Capellas as Duldulao walked out of a store across the street from where the truck had stopped. Tools from Segawa's storage shed were found in the back of the stolen truck. Although several palm and fingerprints were found on the truck and the tools, only some of them were identifiable. The only match found was that of Corpuz on the side view mirror of the truck.

Segawa testified that when he briefly returned home from work at 10:30 a.m. on the morning of September 20, 1995, and subsequently left his house, the garage area was intact. Later that day Segawa was informed by the police by phone that his storage shed had been burglarized. Segawa testified that three large tool boxes as well as one small tool box had been stolen. Segawa estimated the weight of one tool box to be between 140–150 pounds, another to be between 180–200 pounds, and a third to be between 60–70 pounds. Corpuz is 5 feet 2 inches and 120 pounds, and Duldulao is 5 feet 3 inches and 160 pounds.

At the conclusion of the State of Hawai'i's (the State) case, defense counsel moved, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 29(a), for judgment of acquittal. The basis of this motion was that there was insufficient evidence to establish that (a) the storage shed was a dwelling under HRS § 708–810(1); and (b) Duldulao was Corpuz's accomplice. The court denied the motion.

Thereafter, Duldulao testified on his own behalf that he was there when Corpuz carried tools from 99–229 Hailimanu Place to his truck; did not help Corpuz carry or move any of the tools; thought Corpuz owned the house; was a passenger in the truck during the police chase; did not know that the truck was stolen; and did not notice the broken ignition or wires hanging out from the steering column of the truck.

Duldulao also testified on direct examination in relevant part as follows:

Q. Okay, did you tell him to stop in Aiea ['Aiea]?

A. No, he said he was going to stop at Aiea ['Aiea].

Q. Then what happened?

A. Then he carry some tools, put it in the truck and that was it.

\* \* \*

Q. Where were you?

A. In the truck.

Q. Okay. And then what happened after that?

A. Then both of us driving down the road a police car was behind us and I keep telling him to stop. He just keep going.

\* \* \*

A. He didn't want to stop. He didn't want to pull over.

\* \* \*

A. Then we came to a stop. . . .

\* \* \*

A. . . . And then he got out and then he start running on the road.

Q. What did you do?

A. So I just opened my door and walk out because that's when I knew something was wrong.

Q. And what did you do?

A. Just walk away from the truck. Went inside Times Supermarket bought me an orange juice and walk back out and walk to the bus stop—

\* \* \*

Q. Okay. Why did you leave the truck?

A. Because I didn't want to get involved.

The instructions to the jury included instructions on the lesser offenses of trespass and simple trespass. On June 28, 1996, after the jury found Duldulao guilty of Burglary in the First Degree, defense counsel moved, pursuant to HRPP Rule 29(c), for judgment of acquittal. The motion was denied.

## POINTS ON APPEAL

Duldulao contends that the circuit court erred in denying his HRPP Rule 29(a) motion for judgment of acquittal at the close of the State's evidence. Duldulao contends that there was insufficient evidence that (1) the storage shed was a dwelling; and (2) he was Corpuz's accomplice.

■ However, "[e]ven if defendant has moved for judgment of acquittal at the close of the government's case, he must renew the motion at the close of all the evidence if he has put on evidence of his own." 2 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 464 (1982). Consequently, this appeal is an appeal of the denial of Duldulao's HRPP Rule 29(c) motion rather than his HRPP Rule 29(a) motion.

## RELEVANT STANDARD OF REVIEW

■ The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

*State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995).

The test on appeal is not whether guilt was established beyond a reasonable doubt, but whether substantial evidence existed to support the jury's conclusion. *State v. Jackson,* 81 Hawai'i 39, 46, 912 P.2d 71, 78 (1996). " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *State v. Batson,* 73 Haw. 236, 248, 831 P.2d 924, 931, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted). Under such a review, we give "full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *State v. Yabusaki,* 58 Haw. 404, 411, 570 P.2d 844, 848 (1977).

## DISCUSSION

### 1.

HRS § 708–810 (1993) states, in relevant part, as follows:

**Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:

* * *

(c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

HRS § 708–800 (1993) states, in relevant part, as follows:

"Building" includes any structure, and the term also includes any vehicle, railway car, aircraft, or watercraft used for lodging of persons therein; each unit of a building consisting of two or more units separately secured or occupied is a separate building.

* * *

"Dwelling" means a building which is used or usually used by a person for lodging.

Thus, the material elements are: (1) Duldulao or his accomplice (a) intentionally entered or remained unlawfully in a building, (b) with the intent to commit therein a crime against a person or property rights, (c) recklessly disregarded a risk that the building was a dwelling of another; and (2) the building was such a dwelling.

Defense counsel incorrectly states that "the trial court erred in ruling that a common roof on a building ... is the determining factor in deciding a garage or connected building." The trial court explicitly stated that the determining factor was whether the garage was an "attached and integral part"

of the house.[1]

■ Duldulao contends that there is insufficient evidence that the storage shed was a building that was a dwelling. We conclude that the prosecution was not required to prove that the storage shed itself was a building that was a dwelling. We conclude that the prosecution was required to prove that the storage shed was in a garage that was a part of a building that was a dwelling. In other words, the prosecution was required to prove that when Duldulao entered the garage, he entered a part of a building that was a dwelling. In our view, the prosecution satisfied its burden.

Our decision is consistent with the relevant precedent of other states. *See, e.g., State v. Hendrickson*, 528 N.W.2d 263 (Minn.Ct.App. 1995) (although the statutory definition of "dwelling" did not explicitly include appurtenant structures, the statutory definition of "building", a term used in the definition of "dwelling", included any appurtenant or connected structure). The states that have most closely addressed facts similar to ours are California, New York, and Texas.

## A.

The California Penal Code (West Supp. 1996) states in relevant part:

§ 459 **Definition** Every person who enters any house, room, apartment, tenement, shop, . . . outhouse or other building, tent, vessel, . . . or mine or any underground portion thereof, with intent to commit grand or petit larceny, or any felony is guilty of burglary.

§ 460 **Degrees; construction of section** (a) Every burglary of an inhabited dwelling house, vessel, . . . or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary in the first degree.

(b) All other kinds of burglary are of the second degree.

Although California statutes do not list garages within the definition of burglary, California courts have interpreted the garage to be part of the "dwelling house[.]" As noted at trial, *People v. Ingram*, 40 Cal. App.4th 1397, 48 Cal.Rptr.2d 256 (1996), addressed the same issue Duldulao presents. *Ingram* contended that, "although the garage and house share a common roof, there is no connecting door which provides immediate access to the living quarters from the garage", *id.* at 1402, 48 Cal.Rptr.2d at 259, and therefore the crime was burglary in the second degree. The court disagreed and relied heavily on *People v. Moreno*, 158 Cal.App.3d 109, 204 Cal.Rptr. 17 (1984), and *People v. Cook*, 135 Cal.App.3d 785, 185 Cal.Rptr. 576 (1982). While *Cook* involved a door which connected the garage to the house, the court held that "where the garage is an attached and integral part of the house, it is simply one room of several which together compose the dwelling." *Id.* at 796, 185 Cal.Rptr. at 576. *Moreno* addressed a case where no door connected the garage to the house. The court stated that "a connecting door is only one method of demonstrating that a garage was an attached and integral part of a dwelling." *Moreno* at 112, 204 Cal.Rptr. at 20. *Ingram* stated, and we agree, that

[t]he close proximity of an attached structure is precisely what increases the potential for confrontation and threatens the safety of residents. . . . The proper focus is whether the attached· structure is an integral part of the dwelling; that is, functionally interconnected with and immediately contiguous to other portions of the house.

*Ingram* at 1404, 48 Cal.Rptr.2d at 261. It is well documented that the more severe punishment for first degree burglary takes into account the dangerous consequences of the criminal confronting the victim. *See, e.g., People v. Rojos*, 31 Cal.App.4th 611, 37 Cal. Rptr.2d 361 (1995); *State v. Albert*, 426 A.2d 1370 (Me.1981).

\* \* \*

And the Court believed that that same analysis applies to a garage because it is attached to the home and is used in connection with the use of the home.

---

1. The court stated:
   The Court found, and, again this court agrees, that the garage is an attached and integral part of the house. It is simply one room of several which together composed a dwelling. . . .

### B.

New York's Burglary in the Second Degree is very similar to Burglary in the First Degree in Hawai'i, Texas, and California. The New York Penal Law § 140.25 (McKinney 1988) states in relevant part:

**§ 140.25 Burglary in the second degree** A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with the intent to commit a crime therein, and when:

1. In effecting entry or while in the building . . . he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or

(b) Causes physical injury . . .; or

(c) Uses or threatens the immediate use of a dangerous instrument; or

(d) Displays what appears to be a pistol . . .; or

**§ 140.30 Burglary in the first degree** A person is guilty of burglary in the first degree when he knowingly enters or remains .unlawfully in a dwelling with the intent to commit a crime therein, and when in effecting entry or while in the dwelling . . . he or another participant in the crime:

1. Is armed with explosives or a deadly weapon; or

2. Causes physical injury . . .; or

3. Uses or threatens the immediate use of a dangerous instrument; or

4. Displays what appears to be a pistol . . .; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, . . . was not a loaded weapon from which a shot, readily capable of producing death or other serious injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, . . . burglary in the sec-

ond degree, burglary in the third degree or any other crime.

The New York Penal Law definition of "building" and "dwelling" is virtually identical to that of Hawai'i.[2] Therefore, New York is in accord with California and Texas when it held that a victim's garage, located under the house, was part of the ".dwelling" within the meaning of the second degree burglary statute, even though there was no door which connected the garage to the house. *People v. Green*, 141 A.D.2d 760, 529 N.Y.S.2d 852 (N.Y.App.Div.1988), appeal denied 73 N.Y.2d 786,.536 N.Y.S.2d 746, 533 N.E.2d 676 (1988).

### C.

Texas Penal Code Ann. § 30.02 (West 1994 & Supp.1996) reads:

**§ 30.02 Burglary** (a) A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or a building (*or any portion of a building*) not then open to the public, . . .

(b) For purposes of this section, "enter" means to intrude: . . .

(c) Except as provided in Subsection (d), an offense under this section is a:

(1) state jail felony if committed in a building other than a habitation; or

(2) felony of the second degree if committed in a habitation.

(d) *An offense under this section is a felony in the first degree if:*

(1) the premises are a habitation; and

(2) any party to the offense entered the habitation with the intent to commit a felony other than felony theft[.]

The Texas statutory definition of "a habitation" is

a structure . . . that is adapted for the overnight accommodation of persons, and includes: (A) each separately secured or occupied portion of the structure or vehi-

---

2. **§ 140.00 Criminal trespass and burglary; definition of terms** . . . 2. "Building," in addition to its ordinary meaning, includes any structure, vehicle or watercraft used for overnight lodging, . . . Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building. 3. "Dwelling," means a building which is usually occupied by a person lodging therein at night.
New York Penal Law § 140.00 (McKinney 1988).

cle; and (B) each structure appurtenant to or connected with the structure or vehicle.

Tex.Penal Code Ann. § 30.01(1) (West 1994 & Supp.1996).

The Texas definition of "a habitation" is essentially the same as the definition of "dwelling" in HRS § 708–800 except that Texas specifically affords attached structures and structures that are merely appurtenant to a structure adapted for the overnight accommodation of persons the same protection as the main structure (habitation).

*White v. State*, 630 S.W.2d 340 (Tex.App. 1982), held that the garage which was attached and under the same roof as a residence was a habitation within the meaning of the burglary statute. *Johnson v. State*, 844 S.W.2d 872 (Tex.App.—Amarillo 1992), held that a garage which was joined to complainant's home and which shared a common wall with it was a habitation. *Jones v. State*, 690 S.W.2d 318 (Tex.App. 5 Dist.1985), held that an unattached garage was "structure appurtenant to" residence "and thus was within the statutory definition of habitation."

2.

The relevant Hawai'i statutes state as follows:

**§ 702–221 Liability for conduct of another.**

(1) A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(2) A person is legally accountable for the conduct of another person when:

\* \* \*

(c) He is an accomplice of such other person in the commission of the offense.

**§ 702–222 Liability for conduct of another; complicity.** A person is an accomplice of another person in the commission of an offense if:

(1) With the intention of promoting or facilitating the commission of the offense, the person:

\* \* \*

(b) Aids or agrees or attempts to aid the other person in planning or committing it[.]

 With respect to the allegation that Duldulao was either a principal or accomplice in the burglary, we agree with the trial judge's statement that the State was "essentially presenting circumstantial evidence in this case . . . that's within the province of the jury." We conclude that viewing the evidence in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude beyond a reasonable doubt that Duldulao was a principal or accomplice in the burglary.

CONCLUSION

Accordingly, we affirm the circuit court's September 25, 1996 judgment convicting Duldulao of Burglary in the First Degree, HRS § 708–810(1)(c).