[No. F022708. Fifth Dist. Apr. 30, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
REYES SOTELO RUIZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Statement of Facts, parts I., II.A., II.B., II.D., II.F., II.G., and IIIB.

**COUNSEL**

Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DIBIASO, J.**—In part, we hold that the legislative version of the "Three Strikes" law is not an invalid modification of Proposition 7 (the Briggs

Initiative, adopted by the electorate in 1978), and did not result in the infliction of cruel and unusual punishment upon appellant as a "second striker." We also find that imposition of both a Penal Code section 667, subdivision (a) and a section 667, subdivision (b) enhancement was proper.

On October 5, 1994, a jury convicted appellant Reyes Sotelo Ruiz of second degree murder involving the use of a deadly weapon (Pen. Code,[1] §§ 187, 12022, subd. (b))[2] Allegations that appellant had suffered a prior serious felony conviction for robbery within the meaning of section 667, subdivision (a), and that he had served a prior prison term for burglary within the meaning of section 667.5, subdivision (b), were found to be true.

Appellant was sentenced to fifteen years to life for the murder, doubled to thirty years to life; one year for the weapon use; five years for the prior serious felony conviction; and one year for the prior prison term.

The total prison term imposed was thus 37 years to life, with the 7-year determinate term ordered to be served first. The court also informed appellant that the total amount of custody credits awarded him could not exceed one-fifth of the total term imposed.

### STATEMENT OF FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION

### I. *Instructions on Voluntary Intoxication**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1]All statutory references are to the Penal Code unless otherwise stated.

[2]Jose Ramon Ochoa was jointly charged with the murder. He subsequently pleaded guilty to manslaughter. His appeal is not before us.

*See footnote, *ante*, page 1653.

## II. *Challenges to the Three Strikes Law*

Appellant mounts a multifaceted attack on the legislative version of the so-called Three Strikes law, section 667, subdivisions (b) through (i).[10] For the reasons expressed, we will turn away each of his contentions.

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *Legislative Amendment to Initiative*

■ Appellant contends that, to the extent it modifies the punishment for murder and limits the custody credits which can be earned by a convicted murderer, the Three Strikes law constitutes an invalid legislative amendment to a law enacted by initiative. Appellant reasons that section 190 sets the punishment for murder. That statute was rewritten by Proposition 7 (the Briggs Initiative), an initiative measure approved by voters on November 7, 1978. Under article II, section 10, subdivision (c) of the California Constitution, the Legislature "may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval." Proposition 7 did not provide for legislative amendment or repeal of its provisions without voter approval. (*In re Oluwa* (1989) 207 Cal.App.3d 439, 445-446 [255 Cal.Rptr. 35].) The Three Strikes law "amends" section 190, appellant says, because "[a]n amendment is '. . . any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form, . . .' [Citation.] A statute which adds to or takes away from an existing statute is considered an amendment. [Citation.]" (*Franchise Tax Bd.* v. *Cory* (1978) 80 Cal.App.3d 772, 776 [145 Cal.Rptr. 819].) Therefore, according to appellant, the Three Strikes law cannot validly be applied to those who, like himself, must be sentenced pursuant to section 190, and the trial court should not have doubled the minimum term of appellant's indeterminate sentence nor should it have applied to appellant the limitation on his ability to earn custody credits contained in section 667, subdivision (c)(5).

Appellant primarily relies on *In re Oluwa, supra,* 207 Cal.App.3d 439 and *In re Diaz* (1993) 13 Cal.App.4th 1755 [17 Cal.Rptr.2d 395]. In *Oluwa,* the

---

[10]On November 8, 1994, voters approved a Three Strikes initiative measure (Prop. 184), which added section 1170.12 to the Penal Code. Although the provisions of the two statutes are similar, we address here only the legislative version, as appellant's crime antedated the effective date of the initiative measure.

*See footnote, *ante,* page 1653.

issue was the petitioner's entitlement to a particular rate of custody credits. As rewritten by Proposition 7, section 190 referred to article 2.5 of the Penal Code, commencing with section 2930. At the time, article 2.5 contained sections 2930, 2931, and 2932. An analysis which accompanied the ballot statement for Proposition 7 said that, under that initiative, murderers sentenced to prison for 15 years to life would have to serve at least 10 years before becoming eligible for parole. The petitioner was sentenced to 15 years to life in prison for second degree murder on May 26, 1982. After his conviction, the Legislature added sections 2933, 2934, and 2935 to article 2.5. Those sections afforded sentenced prisoners more generous custody credits. (*In re Oluwa*, *supra*, at pp. 442-443.)

The Court of Appeal determined the petitioner was not entitled to the more liberal custody credits, for he was bound by Proposition 7 as enacted by the electorate. (*In re Oluwa*, *supra*, 207 Cal.App.3d at p. 444.) In part, the court relied on article II, section 10, subdivision (c) of the California Constitution. The court found that, since Proposition 7 did not permit amendment or repeal of its provisions without voter approval, legislative change of the provisions enacted by Proposition 7 required voter approval. (*In re Oluwa*, *supra*, 207 Cal.App.3d at pp. 445-446.) The court concluded: "To allow Oluwa the custody credits he seeks would permit the Legislature to amend the provisions of Proposition 7 by reducing the amount of time a second degree murderer must serve before being eligible for a parole hearing without submitting that matter to the voters. The Legislature should not be permitted to do indirectly what which it cannot do directly." (*In re Oluwa*, *supra*, at p. 446.)

In *In re Diaz*, *supra*, 13 Cal.App.4th 1755, the petitioners were sentenced to indeterminate terms under section 190. They were not recidivists and were not sentenced as habitual offenders under section 667.7. At issue was whether murderers with prior serious felony convictions, who were sentenced under section 667.7, could receive one-for-one custody credits under the provisions of section 2933, while first time murderers sentenced under section 190 could only earn credits under the less generous provisions of section 2931. A federal district court had found this to be the result, and had held the sentencing scheme unconstitutional on equal protection grounds. (*Diaz*, *supra*, at pp. 1758-1759.)

In holding that the federal court misinterpreted state law, the Court of Appeal reasoned that in California convicted murderers have always been sentenced under section 190 and not under section 667.7. (*In re Diaz*, *supra*, 13 Cal.App.4th at p. 1759.) It determined that under the plain meaning of section 190, that statute applied to every person convicted of murder, and

such persons must be sentenced under that statute. (*Diaz, supra*, at p. 1760.) To sentence murderers under section 667.7, it found, would impermissibly infringe on the Briggs Initiative: "Section 190 is an initiative measure which cannot be modified by subsequent legislative enactments not having the requisite majority for altering a voter initiative. [Citations.] California law proscribes modification of a voter initiative by legislative enactments 'unless the initiative measure itself permits amendment or repeal without voter approval.' [Citations.] It follows that the punishment prescribed by section 190 may not be modified by the subsequently enacted recidivist statute [section 667.7] providing an entirely different sentencing scheme." (*Diaz, supra*, at p. 1760.)

At the time appellant filed his opening brief in the instant case, *Diaz* provided support for his position. However, *Diaz* was subsequently disapproved by the California Supreme Court in *People* v. *Jenkins* (1995) 10 Cal.4th 234, 248, footnote 8 [40 Cal.Rptr.2d 903, 893 P.2d 1224], to the extent *Diaz* is inconsistent with the views expressed in *Jenkins*.

In *Jenkins*, the Supreme Court was concerned about whether a convicted murderer could properly be sentenced under section 667.7 instead of under section 190 and, if so, the manner of calculation of his or her term. The court concluded that a defendant who is convicted of murder and who meets the requirements for sentencing as a habitual offender under section 667.7 must be sentenced under that statute instead of under section 190. (*People* v. *Jenkins, supra*, 10 Cal.4th at pp. 238, 243.) The court noted: "The evident purpose of [section 667.7]—to provide a distinct and more severe sentencing scheme for violent habitual offenders—plainly suggests that the Legislature intended it to apply, a fortiori, to murderers as well as to criminals who commit other violent, but less serious, felonies. Furthermore, nothing in the language of section 667.7 indicates that the statute was intended to exempt those defendants who are convicted of murder and who otherwise qualify as habitual offenders." (*Jenkins, supra*, at p. 243.)

Taking note of *Diaz*'s evaluation of the Briggs Initiative (*People* v. *Jenkins, supra*, 10 Cal.4th at p. 245), the Supreme Court found that to the extent *Diaz* concluded a person convicted of murder could not be sentenced under any statute other than section 190, *Diaz*'s "construction of [section 190] is not compelled by the language of section 190 or any other provision of the Briggs Initiative." (*Jenkins, supra*, at p. 245, fn. 7.) The Supreme Court determined that section 190 establishes the minimum term of imprisonment a convicted murderer is required to serve; it does not mandate that a murderer must be sentenced under its provisions to the exclusion of any other sentencing scheme. (*Jenkins, supra*, at p. 245, fn. 7.) The high court

acknowledged that section 190 refers to persons convicted of murder, "but neither this statute nor any other provision of the [Briggs I]nitiative indicates that the electorate intended to preclude a murderer from receiving a total sentence that is *greater* than the term provided under section 190 where other factors, in addition to the fact of the conviction of murder, are present that increase the defendant's culpability or otherwise warrant greater punishment.

"We conclude, contrary to the suggestion in *Diaz* [citation], that sentencing a recidivist murderer under section 667.7 is not inconsistent with section 190 and does not otherwise circumvent the intent of the electorate in adopting the Briggs Initiative." (*People v. Jenkins, supra*, at pp. 245-246, fn. 7, italics added.)

We perceive no reason why the *Jenkins* rationale is not equally applicable to the Three Strikes law. (See *People v. Applin* (1995) 40 Cal.App.4th 404, 410 [46 Cal.Rptr.2d 862]; *People v. Sipe* (1995) 36 Cal.App.4th 468, 484 [42 Cal.Rptr.2d 266].) As the Supreme Court pointed out in *Jenkins*, the Three Strikes law is a separate sentencing scheme which, while it does not supersede the habitual offender scheme of section 667.7, is similar in several respects. (*People v. Jenkins, supra*, 10 Cal.4th at p. 238, fn. 2.) For instance, if the prosecution pleads and proves a defendant qualifies for sentencing under the Three Strikes scheme, the defendant must be sentenced under its provisions even if he or she otherwise would qualify for sentencing under section 667.7 "*or some other sentencing statute.*" (*Jenkins, supra*, at p. 238, fn. 2, italics added.)

If sentencing a qualified recidivist murderer under section 667.7 is proper despite the provisions of the Briggs Initiative (*People v. Jenkins, supra*, 10 Cal.4th at p. 245, fn. 7), sentencing a qualified recidivist murderer under the Three Strikes law is likewise proper despite the provisions of the Briggs Initiative. We so hold.

D. *Use of Conviction Antedating Statute's Effective Date**

. . . . . . . . . . . . . . . . . . . . . . . .

E. *Cruel or Unusual Punishment*

 Appellant next argues the sentence imposed on him as a "second striker" pursuant to section 667, subdivision (e)(1), constitutes cruel or unusual punishment because it exceeds the sentence he would have received

---

*See footnote, *ante*, page 1653.

had he been sentenced as a "third striker" pursuant to section 667, subdivision (e)(2)(A)(iii), and because it equals the sentence which he would have received had he been a "third striker" convicted of first degree murder.[13]

██ The judiciary may not interfere with the authority of the Legislature to define crimes and prescribe punishment unless a prescribed penalty is so severe in relation to the crime that it violates the constitutional prohibition against cruel or unusual punishment. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 477-478 [194 Cal.Rptr. 390, 668 P.2d 697]; *In re Lynch* (1972) 8 Cal.3d 410, 423-424 [105 Cal.Rptr. 217, 503 P.2d 921].) Nevertheless, a sentence may violate article I, section 17, of the California Constitution if it is so disproportionate to the crime for which it is imposed that it "shocks the conscience and offends fundamental notions of human dignity." (*Lynch, supra,* at p. 424.) A defendant must overcome a "considerable burden" in challenging a penalty as cruel or unusual. (*People* v. *Wingo* (1975) 14 Cal.3d 169, 174 [121 Cal.Rptr. 97, 534 P.2d 1001].) Habitual offender statutes have long withstood the constitutional challenge of cruel or unusual punishment. (*In re Rosencrantz* (1928) 205 Cal. 534, 539 [271 P. 902]; *People* v. *Weaver* (1984) 161 Cal.App.3d 119, 126 [207 Cal.Rptr. 419] & cases discussed therein.)

██ Appellant does not take the position the Three Strikes legislation on its face authorizes cruel or unusual punishment. Instead, he argues that, as applied to him, the sentence imposed under the Three Strikes law is unconstitutional because it is disproportionate to his crime. (*In re Lynch, supra,* 8 Cal.3d at p. 424.) ██ In assessing this claim, we must consider: (1) the degree of danger the offender or the offense poses to society; (2) how the punishment compares with punishments for more serious crimes in the same jurisdiction; and (3) how the punishment compares with punishment for the same offense in other jurisdictions. (*Id.* at pp. 425-427; *People* v. *Ingram* (1995) 40 Cal.App.4th 1397, 1413-1414 [48 Cal.Rptr.2d 256]; *People* v. *Barrera* (1993) 14 Cal.App.4th 1555, 1567 [18 Cal.Rptr.2d 395].)

(1) *Offense and offender*

██ Appellant committed second degree murder, obviously a serious offense. He makes no attempt to suggest a lengthy sentence is disproportionate when, as here, a recidivist has killed someone. Fundamental notions of

---

[13]In addition to relying on the prohibition against cruel or unusual punishment found in article I, section 17 of the California Constitution, appellant cites the proscription against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution. As he analyzes the issue solely under state law, we will do the same. In any event, we see no basis for invalidating the sentence under the Eighth Amendment. (See *Harmelin* v. *Michigan* (1991) 501 U.S. 957 [115 L.Ed.2d 836, 111 S.Ct. 2680] [sentence of life without possibility of parole upheld for possession of 672 grams of cocaine].)

human dignity are not offended by the prospect of exiling from society those individuals who, like appellant, have proved themselves to be threats to public safety and security. Appellant's sentence is not shocking or inhumane in light of the nature of the offense and offender.

(2) *Punishment for more serious crimes in California*

This is the heart of appellant's argument.

As a "second striker," appellant was sentenced under subdivision (e)(1) of section 667, which provides in pertinent part that "[i]f a defendant has one prior felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." Accordingly, the fifteen-year-to-life sentence prescribed by section 190 for second degree murder was doubled to thirty years to life; in addition, appellant received a total of seven years for his various enhancements (five years pursuant to § 667, subd. (a); one year pursuant to § 667.5, subd. (b); and one year pursuant to § 12022, subd. (b)).

Had appellant been a "third striker," he would have been sentenced under subdivision (e)(2) of section 667. That subdivision provides in part:

"(2)(A) If a defendant has two or more prior felony convictions . . . , the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:

"(i) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions.

"(ii) Imprisonment in the state prison for 25 years.

"(iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046."[14]

Appellant says that a "third striker" who is convicted of murder must be sentenced under option (iii), because this is the only clause which specifically mentions indeterminate terms imposed pursuant to section 190. Thus,

---

[14]We will refer to subparts (i), (ii), and (iii) as options (i), (ii), and (iii), respectively.

according to his calculation, a "third striker" who is convicted of second degree murder with the same enhancements as appellant (plus, of course, an additional prior conviction pursuant to § 667, subd. (a) and resulting 5-year term), would receive 15 years to life for the murder and 12 years for the enhancements, for a total of 27 years to life, 10 years less than appellant received. A "third striker" who is convicted of first degree murder (and who is presumably deserving of greater punishment than a "second striker" convicted of second degree murder) and who has appellant's enhancements plus an additional prior serious felony conviction would receive 25 years to life for the murder plus 12 years for the enhancements, for a total of 37 years to life, the same as appellant's sentence. Appellant says such "gross disproportionality between the sentence appellant actually received and the sentence he would have received had he been a much more egregious offender" violates the constitutional proscription against cruel or unusual punishment.

We disagree with appellant's reading of the statute. The language of section 667, subdivision (e)(2)(A) clearly states that the minimum term of the indeterminate sentence imposed upon a third strike defendant is to be calculated "as *the greater of*" the three options. (Italics added.) Appellant's construction of the statute—requiring those convicted of murder to be sentenced under option (iii)—flies in the face of both the unambiguous language of the law and the expressed intent of the Legislature in enacting the law, i.e., "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (§ 667; subd. (b).) ■ "Familiar canons of statutory construction require that, in construing a statute, a court ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining that intent, we consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework. [Citations.] We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins, supra,* 10 Cal.4th at p. 246.)

■ Moreover, allowing the minimum term of the indeterminate sentence imposed on third strike murderers to be calculated "as the greater of" the three options does not, contrary to appellant's assertion, render option (iii) nugatory or mere surplusage in violation of settled principles of statutory construction. (See *People v. Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154] [construction making some words surplusage to be avoided]; *People v. Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585] [statute should not be given construction which

renders provision nugatory].) Option (iii) refers to sections 190, 1170, and 3046. Section 190 does not provide only for 15-year-to-life and 25-year-to-life sentences for murder. For example, it also provides for death or life in prison without the possibility of parole as a possible sentence for first degree murder. (§ 190, subd. (a).) Section 1170 sets out the determinate sentencing law. Section 3046 sets out minimum parole eligibility dates for persons imprisoned under one or more life sentences.

Option (iii) permits the sentencing court to calculate the minimum term pursuant to existing law. It is conceivable that enhanced punishment for certain offenses, as provided by sentencing provisions predating the Three Strikes law, may be greater than the sentences available under option (i) or option (ii). It would be contrary to the clear intent of the Legislature for Three Strikes defendants to receive less severe punishment under the three strikes law than they would have received prior to the law's enactment. This analysis renders operative each provision of subdivision (e)(2)(A) of section 667, and it also comports with the intent of the Three Strikes law. (*People* v. *Ingram, supra,* 40 Cal.App.4th at p. 1410.)

Thus, in appellant's hypothetical involving second degree murder, section 667 (e)(2)(A) would require a sentence under option (i) of 45 years to life, plus a determinate term of 12 years for the enhancements, for a total term of 57 years to life. This is a considerably longer term than appellant received as a "second striker."

(3) *Punishment for similar offenses in other jurisdictions*

Appellant offers no comparison of recidivist statutes in other jurisdictions. "We simply note California's Three Strikes scheme is consistent with the nationwide pattern of substantially increasing sentences for habitual offenders." (*People* v. *Ingram, supra,* 40 Cal.App.4th at p. 1416.)

(4) *Conclusion*

It is appellant's burden to establish the disparity of punishments in this and other jurisdictions. (See *In re* v. *DeBeque* (1989) 212 Cal.App.3d 241, 254-255 [260 Cal.Rptr. 441].) Appellant has not done so and has misinterpreted the provisions of the Three Strikes law.

F., G.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1653.

III. *Other Sentencing Issues*

A. *Imposition of Section 667, Subdivision (a) and Section 667.5, Subdivision (b) Enhancements*

(1) *Background*

Appellant concedes the trial court imposed enhancements pursuant to section 667, subdivision (a) and section 667.5, subdivision (b), based on convictions for different offenses prosecuted under different case numbers. (Contrast *People* v. *Jones* (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) ▮ However, he claims the two enhancements were improperly imposed because (1) there was insufficient evidence the charges on which the prior convictions were based had been "brought and tried separately" as required by section 667, subdivision (a)(1); and (2) there was no proof he served "separate prison terms" as required by section 667.5, subdivision (b). In a related argument, he says the trial court committed reversible error by failing to allow the jury to determine these issues.[18]

Evidence taken at the trial of the prior conviction allegations, together with appellant's prison packet (§ 969b), showed appellant pleaded guilty to robbery and second degree burglary on February 4, 1992, in the Indio branch of the Riverside County Superior Court. The burglary charge was identified in the abstract of judgment as count 2A, case No. 1CR15260. The robbery charge was identified in the abstract as count 1B, case No. 1CR15290. At trial in the prosecution which resulted in this appeal, Parole Officer Castro, who was familiar with the section 969b packet, testified that the case numbers were "two separate numbers for two separate cases." On March 4, 1992, appellant was sentenced to prison on both charges. He received a two-year term for the robbery, and a concurrent term of one year, four months for the burglary.

(2) *Analysis*

Section 667, subdivision (a)(1) (former subd. (a)) provides in pertinent part: "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for *each such prior conviction on charges brought and tried separately.* The terms of the present offense and each enhancement shall run consecutively." (Italics added.)

---

[18]The People construe appellant's argument as involving the question whether the Three Strikes law includes a requirement that prior felony convictions be "brought and tried separately." This issue has not been raised by appellant and is not before us.

The relevant portion of section 667.5, subdivision (b) states: "[W]here the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for *each prior separate prison term served for any felony* . . . ." (Italics added.)

For our purposes, subdivision (g) of section 667.5 defines a "prior separate prison term" as "a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes . . . ."

Section 667, subdivision (a)(1) does not require service of a prior separate prison term; there is no requirement of prior incarceration or commitment in order for this subdivision to apply. (§ 667, subd. (a)(2).) While no enhancement can be imposed pursuant to section 667.5, subdivision (b) for any felony for which the defendant did not serve a prior separate term in state prison (§ 667.5, subd. (e)), nothing in the language of section 667.5 requires the relevant charges to have been "brought and tried separately." Nevertheless, appellant seeks to engraft each enhancement's requirement onto the other.

Appellant points out that the trial court could not have imposed two section 667, subdivision (a)(1) enhancements without proof the prior convictions were brought and tried separately; nor could it have imposed two section 667.5, subdivision (b) enhancements absent proof the prison sentences were served as separate prison terms. He recognizes that the trial court did not impose two enhancements under either statute. However, because the court could not impose two section 667, subdivision (a)(1) enhancements or two section 667.5, subdivision (b) enhancements, appellant claims "it would be unreasonable for the court to be permitted to impose one enhancement for each of the two sections. Otherwise, the requirements of separate proceedings and separate prison terms could be evaded by imposing two enhancements but imposing each one pursuant to a different code section."

This court has previously held, under circumstances similar to those here, that a trial court may properly impose a five-year enhancement pursuant to section 667, subdivision (a), and a one-year enhancement pursuant to section 667.5, subdivision (b). In *People v. Medina* (1988) 206 Cal.App.3d 986 [254 Cal.Rptr. 89], the defendant had been previously convicted of five felonies, four of which occurred in 1977 and resulted in concurrent prison terms. The fifth conviction took place in 1982. In sentencing the defendant for his current offense, the trial court imposed a section 667, subdivision (a)

enhancement for one 1977 conviction, a section 667.5, subdivision (b) enhancement for another 1977 conviction, and a second section 667.5, subdivision (b) enhancement for the 1982 conviction. (*Medina, supra,* at p. 989.)

On appeal, the defendant contended that imposition of both enhancements based on the 1977 convictions violated section 654. In part, he relied on *People* v. *James* (1985) 170 Cal.App.3d 164 [216 Cal.Rptr. 24], in which the People had conceded a section 654 violation. The People had however abandoned that position in *Medina* and we agreed, finding no violation of that statute under the relevant facts. (*People* v. *Medina, supra,* 206 Cal.App.3d at pp. 989-990.) We held that section 667, subdivision (a) does not supersede or override section 667.5 where there are multiple convictions being served during a single sentence. (*People* v. *Medina, supra,* 206 Cal.App.3d at p. 990.) In part, we reasoned that the underlying purposes of section 667, subdivision (a) and section 667.5, subdivision (b) are different. The purpose of section 667, subdivision (a) is to visit greater punishment on recidivists who commit serious felonies, while section 667.5, subdivision (b) was intended to provide for additional punishment of the felon whose prior prison term failed to deter him or her from future criminal conduct. (*Medina, supra,* at p. 991.) We acknowledged that section 654 might apply if, for example, enhancements under section 667, subdivision (a) and section 667.5, subdivision (b) were imposed based on a single conviction for one count of robbery. In the case then before us, however, the trial court did not use the same underlying facts; the section 667, subdivision (a) enhancement related to one robbery conviction while the section 667.5, subdivision (b) enhancement related to a separate and distinct robbery conviction based on different facts. (*Medina, supra,* at pp. 990-991.)

We held that nothing in section 667, subdivision (a) prevents the imposition of additional punishment based on other code sections that may apply in a particular case. We concluded: "[T]he obvious intent of section 667.5 is to count each period of confinement in prison as one that can be used as an enhancement, not to enhance a defendant's sentence more than once for a single prison confinement where there were multiple counts. Under the plain meaning of the words used in subdivision (g), it is clear that this defendant's sentence could not be enhanced twice under section 667.5 for the single term of confinement he served for the two robberies." (*People* v. *Medina, supra,* 206 Cal.App.3d at p. 991.)

We continued: "Looking to the entire statutory system, it is also clear that section 667.5 was not intended to bar a trial court from using both a section 667 enhancement and a section 667.5 enhancement where each underlying

offense was served as part of one prison term . . . . The plain meaning of section 667.5, subdivision (g) is to prevent multiple one-year enhancements under section 667.5 itself where the offender has served one period of prison confinement, or block of time, for multiple offenses or convictions. . . ." (*People* v. *Medina, supra,* 206 Cal.App.3d at p. 992.)

Although *Medina* addressed an argument expressly made under section 654, we perceive no reason why it should not apply equally to appellant's variation on the theme. However, appellant says *Medina* is no longer dispositive because of *People* v. *Prather* (1990) 50 Cal.3d 428 [267 Cal.Rptr. 605, 787 P.2d 1012] and *People* v. *Jones, supra,* 5 Cal.4th 1142.

In *Prather,* the California Supreme Court found "untenable" and "hypertechnical" an interpretation which distinguished "prior felony convictions" from "prior prison terms" for purposes of determining whether the double-base-term-limitation of section 1170.1, subdivision (g) applied to section 667.5, subdivision (b) enhancements, as well as to section 667, subdivision (a) enhancements. (*People* v. *Prather, supra,* 50 Cal.3d at pp. 439-440.) The court stated: "[S]ection 667.5(b) . . . merely provides a special sentence enhancement for that particular *subset* of 'prior felony convictions' that were deemed serious enough by earlier sentencing courts to warrant actual imprisonment. [Citations.] Accordingly, we hold that the broad mandate of article I, section 28, subdivision (f), concerning the use of any 'prior felony conviction[s]' for enhancement purposes, necessarily includes the lesser category of enhancements based on prior felony convictions for which imprisonment was imposed." (*Prather, supra,* at p. 440.)

In *People* v. *Jones, supra,* 5 Cal.4th 1142, the Supreme Court concluded that the notion sections 667, subdivision (a) and 667.5 identify and punish differently situated individuals runs afoul of *Prather.* Instead, both enhancements apply to the same fact—a prior conviction of a felony. (*Jones, supra,* at pp. 1148-1149.) The court held that "when multiple statutory enhancement provisions are available *for the same prior offense,* one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply." (*Jones, supra,* at p. 1150, italics added.) The court pointed out that peculiar results would otherwise follow, as five-year enhancements would become six- or eight-year enhancements, contrary to the intent of the Legislature and voters who enacted the statutes. (*Ibid.*)

Recently, the California Supreme Court made it clear that *Jones* does not erase every distinction between serious felony and prison term enhancements. (*People* v. *Coronado* (1995) 12 Cal.4th 145, 155-156 [48 Cal.Rptr.2d 77, 906 P.2d 1232]; *People* v. *Baird* (1995) 12 Cal.4th 126, 132-134 [48

Cal.Rptr.2d 65, 906 P.2d 1220].) Contrary to the concerns addressed in *Jones*, peculiar or anomalous sentences will not result if a trial court is permitted to impose prior serious felony and prior prison term enhancements under the circumstances present here, because separate offenses for different convictions are involved. It cannot be said that all or nearly all convictions which qualify for enhancement under section 667, subdivision (a)(1) will be accompanied by distinct charges resulting in prison terms, or that convictions resulting in prison terms within the meaning of section 667.5 will be accompanied by other convictions which qualify under section 667, subdivision (a)(1). (See *Coronado*, *supra*, at p. 156; contrast *People v. Jones*, *supra*, 5 Cal.4th at p. 1150.)

Post-*Prather* or *Jones* decisions confirm that *Medina* is still good law in its application to the circumstances presented by the case now before us. As the Court of Appeal aptly stated in *People v. Wiley* (1994) 25 Cal.App.4th 159 [30 Cal.Rptr.2d 701]: "Nothing in *Jones* supports Wiley's view [that a one-year and a five-year enhancement cannot be imposed for separate counts of a multicount information to which the defendant pleaded guilty], and that decision does not address *Medina* or analogous facts. We find the logic of *Medina* compelling and conclude the court did not err in imposing these enhancements." (*Wiley*, *supra*, at p. 164; see also *People v. Shea* (1995) 39 Cal.App.4th 1257, 1274 [46 Cal.Rptr.2d 388] [multiple convictions resulting in one term of prison confinement constitute one prior for § 667.5, but fact defendant may be subject to only one § 667.5 enhancement does not mean no other enhancement can be applicable]; *People v. Brandon* (1995) 32 Cal.App.4th 1033, 1054-1055 [38 Cal.Rptr.2d 751] [*Jones* "inapposite" where § 667, subd. (a) & § 667.5, subd. (b) enhancements referred to multiple offenses]; *People v. Gonzales* (1993) 20 Cal.App.4th 1607, 1609-1611 [25 Cal.Rptr.2d 305] [*Jones* does not preclude imposition of § 667, subd. (a) & § 667.5, subd. (b) enhancements where prior prison term is based in part on same case that is basis for prior serious felony enhancement, and based in part in separate, independent case]; *People v. Perez* (1992) 4 Cal.App.4th 893, 910 [6 Cal.Rptr.2d 141] [enhancements under § 667, subd. (a) & § 667.5, subd. (b) properly imposed for different offenses even though convictions occurred at same time and sentences served together]; *People v. Irvin* (1991) 230 Cal.App.3d 180, 189-190 [281 Cal.Rptr. 195] ["A defendant may be sentenced for a prior serious felony conviction and then also sentenced for a prior prison term for a different prior offense even though the convictions occurred at the same time and the sentences were served together."].) Pre-*Prather* cases are in accord. (See, e.g., *People v. Vaughn* (1989) 209 Cal.App.3d 398, 402-403 [257 Cal.Rptr. 229] [sentence properly enhanced under § 667, subd. (a) & § 667.5, subd. (b) for two separate crimes or acts where underlying convictions were two separate burglaries which resulted in concurrent sentences].)

For all the reasons we have expressed, we hold that the trial court did not err in imposing a five-year enhancement pursuant to section 667, subdivision (a)(1) based on appellant's prior robbery conviction, and a one-year enhancement pursuant to section 667.5, subdivision (b) based on appellant's prior conviction of second degree burglary and resulting prison term. This is so because the enhancements were based on different offenses. There was no requirement that the underlying convictions be based on charges which were "brought and tried separately," nor that appellant served "separate prison terms" for those convictions.[19]

B. *Reservation of Jurisdiction Regarding Victim Restitution\**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is modified by striking the trial court's reservation of jurisdiction to award victim restitution. The trial court shall prepare an amended abstract of judgment and forward it to the appropriate authorities. As so modified, the judgment is affirmed.

Martin, Acting P. J., and Buckley, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 14, 1996.

---

[19]Given our conclusion, it necessarily follows the trial court did not err by failing to instruct the jury to determine these issues. Moreover, the state Supreme Court recently held that the question whether a prior serious felony conviction alleged pursuant to section 667, subdivision (a)(1) arose from "charges brought and tried separately" was to be determined by the court rather than the jury. (*People* v. *Wiley* (1995) 9 Cal.4th 580, 583 [38 Cal.Rptr.2d 347, 889 P.2d 541].) By the same reasoning, it would seem the determination whether a defendant served a prior prison term, within the meaning of section 667.5, would also be a question for the trial court. However, we leave that issue for a case in which it is presented.

*See footnote, *ante*, page 1653.