Filed 3/26/14  P. v. Fulton CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B244838 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA380295) |
| MICHAEL DAVID FULTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barbara R. Johnson, Judge.  Affirmed as modified.

Marilee Marshall & Associates, Inc. and Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Yun K. Lee and Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Michael David Fulton (defendant) appeals from his burglary and attempted burglary convictions, and seeks correction of sentencing errors. He contends that the judgment must be reversed due to prosecutorial misconduct and the trial court's failure to declare a mistrial sua sponte. We agree that the sentence must be modified, but we reject defendant's remaining contentions and affirm the judgment as modified.

## BACKGROUND

**Procedural history**

Defendant was charged in an amended information with two counts of first degree residential burglary in violation of Penal Code section 459[1] (counts 1 & 4), and one count of attempted first degree residential burglary in violation of sections 664 and 459 (count 3). The amended information further alleged that defendant had suffered 10 prior serious or violent felony convictions within the meaning of the "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and for purposes of section 667, subdivision (a)(1). In addition, the amended information alleged that defendant had served eight prior prison terms within the meaning of section 667.5, subdivision (b).

A jury found defendant guilty as charged, and in a bifurcated court trial on the prior conviction allegations, the court found eight of them to be true. On October 10, 2012, the trial court sentenced defendant to a total prison term of 40 years to life, consisting of 25 years to life on count 1, plus a consecutive term of five years under section 667, subdivision (a)(1), for each of three prior convictions. Identical concurrent terms were imposed as to counts 3 and 4. In addition, the trial court imposed eight one-year terms due to prior convictions, for a total prior prison term enhancement under section 667.5, subdivision (b), of eight years, all stayed pursuant to section 654. Defendant was ordered to pay mandatory fines and fees and to submit to DNA testing. He was given 725 total days of presentence custody credit. Defendant filed a timely notice of appeal from the judgment.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

**Prosecution evidence**

Defendant's parole agent Byron Bluem (Bluem) testified that defendant wore a GPS tracking device and owned a specific decommissioned black and white police car. Defendant wore the tracking device on his ankle continuously from May 2010 through at least January 11, 2011.

Autumn Johnson lived in an apartment building on the 4100 block of Garthwaite Avenue. On December 30, 2010, at approximately 12:30 p.m., she locked her front door and left her apartment. When she returned a few hours later, she discovered that her door had been taken off, her home had been ransacked, and property, including laptop computers, a stereo, DVD player, an X-box game player, jewelry, and money had been taken. Her property was never recovered.

On January 6, 2011, Raebette Bradley (Bradley) lived alone in the apartment directly above Marguerite Orme (Orme) in a building located on the 4200 block of Garthwaite Avenue. Bradley locked her apartment door and left for work at 8:15 a.m. that morning. At approximately 1:30 p.m., as Orme was watching television, she heard heavy breathing, grunting, and a rustling noise coming from the building's foyer. Orme thought it was the building's handyman, so she telephoned Bradley to determine whether Bradley was expecting the handyman. When Bradley said no, Orme opened her door and heard a male voice say "shit" or "damn." Orme then noticed through her window what appeared to be a dirty, black and white police car with no lettering on it, parked in the front of the apartment complex next door. She then saw a tall, slender, African-American man rapidly moving from the front entrance of her building onto the sidewalk while placing something into his black bomber jacket and looking over his shoulder. The man got into the black and white car and sped off. Orme leaned over the rail, saw that Bradley's door had been demolished, and immediately called her neighbor and the police. She identified defendant in court as the man she saw. Bradley left work as soon as Orme called her at about 1:30 p.m., and arrived home about 2:00 p.m.

Gladys Woodson (Woodson), who lived next door to Bradley and Orme, saw a police car as she was leaving her house at about 1:30 p.m. on January 6, 2011. The car

3

was black and white, but had no lettering. It was parked about 15 feet away from her, and she could see that the sole occupant was an African-American man in the driver's seat. Woodson left in her car and as she was returning 15 or 20 minutes later, she saw the same car coming around a corner about two blocks from her home.

On January 11, 2011, Brenda Joyce Edwards (Edwards) lived on the 4100 block of Garthwaite Avenue with her daughter LaFone Edwards (LaFone) and her granddaughter. At approximately noon that day, they locked the house and left. When they returned about four hours later, they saw that their door frame had been damaged and the bedroom ransacked. Missing property included, among other things, a jewelry box, an iPod, a gun, jewelry, and money.

Los Angeles Police Department (LAPD) Officer John Biondo was on patrol in the Leimert Park area, about a mile or two from Garthwaite Avenue on January 19, 2011, when he spotted defendant's car. Officer Biondo had earlier been given the license plate number of defendant's car in a briefing about area burglaries. Officer Biondo followed defendant to a gas station where defendant was detained.

LAPD Detective Blanca Pasos was called to the gas station where she had defendant's car photographed, impounded, and searched. In addition to several bags of items in the rear seat, there were watches, change, and a leather jacket in the front seat, and other things in the trunk. Detective Pasos saw what she believed to be burglary tools, such as a screwdriver, a thin saw, pliers, and other power tools in the car. After the property was removed and itemized, Edwards and her daughter identified and claimed several of the items as theirs.

Gabriel Rogers (Rogers), a parole agent for the California Department of Corrections, testified as an expert in the use of "Veritrack," the GPS tracking system used to monitor parolees. He reported that the system was capable of tracking parolees minute by minute. At Bluem's request, Rogers verified defendant's presence on December 30, 2010, January 6, 2011, and January 11, 2011, at the three crime scenes on Garthwaite Avenue, and provided Bluem with aerial maps pinpointing defendant's locations within a 15-meter margin of error. Rogers thus confirmed that on December 30, 2010, between

4

12:00 p.m. and 2:00 p.m., defendant was on the 4100 block of Garthwaite Avenue near the buildings where Johnson and Edwards lived.  He was in that same location on January 11, 2011, between 12:00 to 4:00 p.m.  On January 6, 2011, between 1:22 p.m. and 1:43 p.m., defendant was near the homes of Bradley, Orme, and Woodson in the 4200 block of Garthwaite Avenue.  A secondary system, Satellite Tracking of People (STOP), verified that defendant was within 100 meters of the crimes scenes on the same dates and times.

**Defense evidence**

Defendant, who represented himself at trial, called LaFone, a GPS analyst, several law enforcement officers as well as testifying himself.

LAPD Officer Christian Peraza testified that on January 6, 2011, at 3:00 p.m., he met with Orme and Bradley regarding the attempted burglary of Bradley's apartment. Orme told Officer Peraza that she was in her apartment on the second floor at approximately 1:45 p.m., when she heard "banging" noises coming from downstairs, opened her door, and asked if someone needed help.  Orme heard "loud breathing" and footsteps walking away from the door, and saw someone wearing dark jeans get into and drive away in what appeared to be a police car without the sirens.  Officer Peraza also met with Woodson, who stated that she saw a male Black driving a black and white vehicle in the area around 1:50 p.m.

LAPD Officer John Carlyle testified that he went to Johnson's home in response to her burglary report, and when he arrived at 7:30 p.m., the door frame had already been replaced by maintenance workers.  Johnson informed Officer Carlyle that she had left her apartment around 1:00 p.m., and returned at approximately 4:00 p.m.  Two laptop computers, two cellular phones, an X-box game unit, six X-box games, cash, and miscellaneous jewelry had been stolen.  LAPD Officer Ryan Rycroft testified regarding a report of a similar burglary on January 2, 2011, in the 4100 block of Garthwaite Avenue, not involving any of the victims in this case.

Officer Sunny Sasajima was among those who responded to the gas station where defendant had been detained.  Officer Sasajima searched defendant's vehicle and found a cigar box containing watches, rings, and other jewelry, as well martial arts sticks,

5

dominos, tools, miscellaneous clothing, and papers. Officer Sasajima testified that a condition of defendant's parole permitted the officers to search defendant's car.

On January 18, 2011, LAPD Officer Rodney Peacock pulled defendant's old police car over for speeding, ran a check of defendant's license, registration, and proof of insurance, but did not issue a citation.

Dwayne White, an employee of FDS Labs which provides GPS and other services, testified that he had analyzed data submitted by STOP to determine whether defendant was at the crime scenes relevant to this case. The data indicated the following: on December 30, 2010, defendant arrived in the area of the burglary at 12:46 p.m. and departed at 1:40 p.m.; on January 6, 2011, defendant arrived at the area of the attempted burglary at 1:22 p.m. and departed at 1:44 p.m.; and on January 11, 2011, defendant arrived at the area of the burglary at 12:17 p.m. and left at 12:45 p.m. STOP certified that the results could pinpoint defendant's location within 100 meters of the relevant addresses.

LaFone testified that she called the police to report the burglary at her home on January 11, 2011. She told the police that "a lot of jewelry," which included a five-carat diamond ring, a gun, money, an iPod, an amplifier, and her daughter's bank, had been stolen. She later discovered additional items and made a supplemental report. Most of her missing items were recovered, but not the most valuable jewelry.

Defendant testified that on December 30, 2010, he was in the Leimert Park area looking for an apartment. He was unable to call the witness he contacted about an apartment because the police took his cell phone. Defendant admitted he had been convicted of multiple counts of residential burglary and attempted burglary in 1986 and 1993, and that he had served three prison terms. At the time defendant was arrested he earned his living teaching martial arts and no longer stole. Defendant claimed that all the property found in his car belonged to him or his girlfriends. He was unable to call witnesses to verify his ownership of the property because the court did not authorize sufficient funds to contact them.

6

## I. Prosecutorial misconduct

Defendant contends that the judgment should be reversed due to the prosecutor's misconduct in eliciting evidence suggesting that he was a sex offender. Defendant did not object, suggest a limiting instruction, or move for a mistrial, but contends that an objection would have been futile, and that the trial court should have declared a mistrial on its own motion. Defendant also contends that the misconduct deprived him of due process and a fair trial in violation of the state and federal constitutions.

Prior to trial the prosecutor informed the court that defendant's parole agent would be testifying that defendant was required to wear a GPS device, and that she did not intend to ask the agent about the underlying reason or why defendant was on parole. Bluem was the prosecution's first witness. The prosecutor asked him: "In your current position, what are your responsibilities?" Bluem replied that he was "Currently . . . assigned to the mid city 2 GPS unit, I'm assigned to sex offenders who were placed on what they call a GPS tracking system, and that's my total assignment." He then identified defendant in court as a person within his assignment.

Although defendant did not object, the trial court interrupted and conducted a discussion outside the jury's presence about Bluem's statements. The prosecutor represented that she had warned Bluem not to mention the subject. Bluem explained that that the prosecutor asked what his assignment was, and that his assignment was supervising sex offenders. The court told Bluem that he should have testified about his assignment without indicating that defendant was a sex offender, adding that the testimony had prejudiced the defendant. When advised that there were other parole agents who supervised gang members with GPS devices, the court ordered the prosecutor to bring out the fact that other people wore GPS devices, but not to mention gangs or any details about gangs. The court added, "Whether that's his assignment or not. That's your next question. . . . And no further mention of sex offenders." The witness replied, "Okay."

Back in the presence of the jury, the prosecutor asked: "Aside from individuals who may have sex offenses, are there other individuals who are required to wear GPS devices?" Bluem replied, "Yes." The prosecutor then asked, "All right. And have you had contact with those types of individuals in your profession?" Bluem replied, "Not really, Ma'am, No."

"To preserve a claim of prosecutorial misconduct for appeal, a criminal defendant must make a timely objection, make known the basis of his objection, and ask the trial court to admonish the jury. [Citation.]" (*People v. Brown* (2003) 31 Cal.4th 518, 553.) The failure to object and request an admonishment may be excused when doing so would have been futile. (*Ibid.*) A defendant may not claim futility after the trial court has made a ruling or statement that placed him on notice that an objection would not have been futile. (*People v. Wilson* (2008) 44 Cal.4th 758, 793.) Here, the trial court made the first objection sua sponte and told the prosecutor and Bluem that Bluem's testimony was prejudicial to defendant. Back in the presence of the jury, the prosecutor asked a question that elicited a response suggesting that Bluem had supervised only sex offenders. At this point defendant was on notice of the trial court's concern about this line of questioning, but still, he did not object. He has not preserved the issue for appellate review.

In any event, any error would have been harmless under any standard. Defendant contends that prejudice is shown by the prosecutor's questions on cross-examination and her argument suggesting that defendant targeted women who lived alone or without men. We disagree. The prosecutor did not mention or link defendant's sex offender status to the burglaries when cross-examining him or in final argument, and defendant did not object to the questions or comments. Further, sex offense convictions under section 261 were not used for impeachment. Finally, defendant's own far-fetched testimony, his admission to multiple counts of residential burglary and three prior prison terms, and the overwhelming evidence of his guilt lead us to conclude beyond a reasonable doubt that the verdict would not have been any different if the jurors had not heard testimony

8

implying that defendant was a sex offender.  (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Further, the trial court was not required to declare a mistrial on its own motion and did not err by not doing so.  Once jeopardy has attached, the trial court may not declare a mistrial unless defendant consents, except in limited instances of legal necessity.  (*Curry v. Superior Court of San Francisco* (1970) 2 Cal.3d 707, 717-718.)  The admission of improper testimony or inadmissible evidence is mere error of law or procedure, and does not constitute legal necessity.  (*Id.* at pp. 713-714; see also *People v. Upshaw* (1974) 13 Cal.3d 29, 33.)  Because a defendant may have many reasons for not requesting a mistrial, the better practice is for the court to wait until such time as there is a conviction, and then consider the error if raised in a motion for new trial.  (See *Curry*, *supra*, at p. 714.)

If a mistrial had been requested and denied, we would find no abuse of discretion in that ruling.  A prosecutor's misconduct or an improper statement volunteered by a witness will justify granting a mistrial when the trial court finds that the incident is incurably prejudicial, such that it has irreparably damaged the defendant's chances of receiving a fair trial.  (*People v. Dement* (2011) 53 Cal.4th 1, 39.)  "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.  [Citation.]"  (*People v. Haskett* (1982) 30 Cal.3d 841, 854.)

Here, it is unlikely that the trial court would have found this incident to be incurably prejudicial, as the improper testimony was brief, came early in the trial, and at most merely implied that defendant was a sex offender.  Further, it was no worse than other cases in which the erroneous admission of evidence of a defendant's criminality did not justify a mistrial.  (See, e.g., *People v. Ledesma* (2006) 39 Cal.4th 641, 683 [revelation that defendant was being retried after prior conviction and death sentence]; *People v. Avila* (2006) 38 Cal.4th 491, 574 [improper reference to defendant's imprisonment]; *People v. Bolden* (2002) 29 Cal.4th 515, 554-555 [defendant on parole].)

9

As defendant did not preserve the issue for appeal and did not make a constitutional argument below, we also reject his contention that the incident violated the state and federal constitutions. (See *People v. Thornton* (2007) 41 Cal.4th 391, 443.)

## II.  Sentencing errors

Defendant contends the trial court erred in imposing and staying eight one-year enhancements under section 667.5, subdivision (b), when the evidence showed that defendant had served only three separate prison terms for the eight prior convictions. Defendant also contends that the court erred in imposing and staying an additional one-year term pursuant to section 667.5, based on the same robbery conviction in case No. A338155, for which the court also imposed a five-year enhancement pursuant to section 667, subdivision (a). Respondent agrees that the trial court erred, but the parties disagree as to the appropriate disposition.

Section 667.5, subdivision (b), requires the court to impose a consecutive one-year term for each qualifying prior separate prison term served. "A prior separate prison term . . . mean[s] a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes." (§ 667.5, subd. (g).) Here, the trial court found that defendant had suffered eight prior felony convictions in three cases, Nos. A338155, A759749, and BA053150. The evidence showed that defendant served a single prison term in each case; thus, as the convictions resulted in three prison terms, only a single one-year enhancement may be imposed as to each case. (§ 667.5, subds. (b), (g); *People v. Langston* (2004) 33 Cal.4th 1237, 1241.)

The trial court also imposed a consecutive term of five years under section 667, subdivision (a)(1), for each of three prior serious felony convictions in the same cases, in addition to the one-year prison enhancements. Defendant contends that it was error to do so in case No. A338155.

 "[W]hen multiple statutory enhancement provisions are available for the *same* prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply." (*People v. Jones* (1993) 5 Cal.4th 1142, 1150 (*Jones*), italics

10

added.)  However, when the trial court finds that the defendant suffered multiple serious felony convictions in a single case that resulted in a combined prison term, and at least one of the felonies qualifies under section 667 as a serious felony, the imposition of both a one-year enhancement under section 667.5, subdivision (b), and a five-year enhancement under 667, subdivision (a)(1), is proper.  (See *People v. Ruiz* (1996) 44 Cal.App.4th 1653, 1669.)  Here, each of the three cases involved multiple felony counts: robbery and second degree burglary in case No. A338155; three counts of burglary and attempted burglary in case No. A759749; and one rape count, two counts of burglary, and one count of attempted burglary in case No. BA053150.  However, as to case No. A338155, the trial court found true just the robbery count.  Thus, only the five-year enhancement was proper for that conviction, and the one-year enhancement must be stricken.  (*Jones, supra*, 5 Cal.4th at p. 1153.)

We conclude that the trial court could properly have imposed just two one-year enhancements in addition to three five-year enhancements.  However, it was error to stay the enhancements:  "Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken.  [Citations.]"  (*People v. Langston, supra*, 33 Cal.4th at p. 1241.)  Defendant asks that we strike all eight enhancements.  Respondent contends that the matter should be remanded to the trial court for the opportunity to impose or strike the two remaining proper one-year enhancements.

Although the trial court erred in staying the enhancements in this case, we decline to remand for a new sentencing hearing.  The record shows that the prosecutor did not include the enhancements in recommending a sentence of 25 years to life in prison, nor did she mention them at sentencing.  The trial court explained its decision to impose only three enhancements under section 667, subdivision (a), and its decision to run counts 1 and 3 concurrently, as follows:  "But I believe that 40 years is sufficient considering your

11

age, considering your present health."[2]  To remand under these circumstances would be to engage in a useless act. Accordingly, we conclude that in this case the proper course of action is to modify the judgment by ordering that all the prison term enhancements be stricken (not stayed) in conformity with the decisions in *People v. Langston, supra*, 33 Cal.4th at page 1241, and *Jones, supra*, 5 Cal.4th at p. 1153.

## DISPOSITION

The judgment is modified to strike the eight enhancements imposed under section 667.5, subdivision (b).  In all other respects the judgment is affirmed.  The superior court is ordered to amend the abstract of judgment to reflect these modifications and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS


---

**2**     Defendant was 55 years old at the time of sentencing, and had missed two court dates due to illness shortly before sentencing.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.